W. Brent **THOMPSON**, Appellant,

v.

**CHRYSLER FIRST BUSINESS CREDIT CORP.**, Appellee.

No. 05–91–00955–CV.

Court of Appeals of Texas, Dallas.

July 30, 1992.

ness Credit Corporation in the amount of $201,436.44. In one point of error, appellant contends that the trial court erred in granting the motion for summary judgment. We affirm.

## FACTS

On December 19, 1983, Marks Market, Inc. (Marks Market) signed a note (the Note) and borrowed $377,500 in real estate purchase money funds from B.A. Business Credit Corporation, the predecessor to Chrysler First Business Credit Corporation (Chrysler). Marks Market was purchasing the realty from Thompson. The loan was secured by a deed of trust and guaranteed by Thompson, Charla Marks, and Robert Marks. On December 20, 1984, Marks Market signed an Extension Agreement for Note and Deed of Trust extending installment payments on this debt until 2013.

Marks Market defaulted on the loan. In December 1987, Chrysler notified Marks Market and Thompson of the default. On April 6, 1988, Chrysler filed an action against Thompson, as guarantor, in Denton County seeking judgment for the balance on the Note in the amount of $348,055.36.

Marks Market filed a Chapter 11 bankruptcy petition in May 1988 to prevent foreclosure by Chrysler. Chrysler filed a motion to lift stay, and Marks Market agreed to pay Chrysler $1500 per month on the debt. Marks Market defaulted,[1] and the bankruptcy was dismissed in August 1989.

On October 2, 1989, Chrysler appointed Kathy Farruya as substitute trustee on the deed of trust. On October 3, 1989, while the Denton County action was pending, Chrysler non-judicially foreclosed its lien. Chrysler purchased the property at the foreclosure sale for approximately seventy percent of its fair-market value. The Denton County suit was dismissed. Chrysler then filed suit against Thompson in Dallas County for the deficiency, resulting in the judgment that is the subject of the suit. The trial court granted Chrysler's motion

Royce Coleman, Denton, for appellant.

Michael G. Foster, Dallas, for appellee.

Before STEWART, CHAPMAN and KAPLAN, JJ.

## OPINION

CHAPMAN, Justice.

W. Brent Thompson appeals a summary judgment in favor of Chrysler First Busi-

---

1. An interlocutory default judgment was entered against Charla and Robert Marks, Thompson's co-guarantors. That judgment is not a subject of this appeal.

for summary judgment, from which Thompson appeals.

## LAW

### 1. Standard of Review— Summary Judgment

■ Summary judgment may be rendered only if the pleadings, depositions, admissions and affidavits show that (1) there is no genuine issue as to any material fact and (2) the moving party is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 412 (Tex.1989). A summary judgment seeks to eliminate patently unmeritorious claims and untenable defenses, not to deny a party its right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).

■ In a summary judgment proceeding, the plaintiff, as movant, must conclusively prove its entitlement to prevail on each element of the cause of action as a matter of law. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). The plaintiff is not under any obligation to negate affirmative defenses. The pleading of an affirmative defense does not, in itself, defeat a motion for summary judgment by a plaintiff whose proof conclusively establishes its right to an instructed verdict. The defendant must come forward with evidence sufficient to raise an issue of fact with respect to each element of the defense to avoid summary judgment. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984).

### 2. Suit on a Note—Deficiency

■ Where a validly executed note goes into default and there is a resulting trustee's sale of the security for the note, the mortgagee must prove the following elements before it is entitled to a judgment for any deficiency remaining on the note:

(1) the amount due on the note at the time of foreclosure;

(2) that proper notice of acceleration has been given;

(3) that a valid foreclosure sale was made; and

(4) that he has given credit to the obligor for the amount received at the trustee's sale and any other legitimate credit. *Caruth Mortgage Corp. v. Ford*, 630 S.W.2d 897, 899 (Tex.App.—Houston [1st Dist.] 1982, no writ); *Williams v. Henderson*, 580 S.W.2d 37, 39–40 (Tex.Civ. App.—Houston [1st Dist.] 1979, no writ).

## APPLICATION OF THE LAW TO THE FACTS

### SUIT ON THE GUARANTY

#### A. Amount Due

##### 1. Applicable Law—Balance Due

■ A statement of the balance due will support a motion for summary judgment. *See Ecurie Cerveza Racing Team v. Texas Commerce Bank*, 633 S.W.2d 574, 575 (Tex.App.—Houston [14th Dist.] 1982, no writ).

##### 2. Chrysler's Summary Judgment Evidence/Holding

In paragraph fifteen of his affidavit, John Cattlett, Chrysler's account executive, states that, "At the time of the foreclosure sale, the principal balance on the note was three hundred thirty thousand four hundred fourteen and 08/100 dollars ($330,-414.08) and the accrued interest balance was one hundred thirteen thousand seven hundred seventeen and 16/100 dollars ($113,717.16), totalling the sum of four hundred forty-four thousand one hundred thirty-one and 24/100 dollars ($444,131.24)."

##### 3. Thompson's Contentions
###### (a) Conclusory Affidavit

■ Thompson filed an objection to the Cattlett affidavit in the trial court. He contended that the affidavit testimony regarding the amount due was hearsay and conclusory. On appeal, Thompson argues that Cattlett's testimony was conclusory because the principal and interest calculations were not set forth in detail, but, rather, only the balances due were given. Thompson complains that Chrysler did not set forth its computations of principal, interest, and the payments to be made by

Marks Market. However, the record reflects that Thompson failed to obtain a ruling on this objection. Failure to object and obtain a ruling amounts to a waiver. TEX.R.APP.P. 52(a). This rule applies to summary judgments. *Wenco of El Paso/ Las Cruces, Inc. v. Nazario*, 783 S.W.2d 663, 665 (Tex.App.—El Paso 1989, no writ); *Utilities Pipeline Co. v. American Petrofina Mktg.*, 760 S.W.2d 719, 723 (Tex. App.—Dallas 1988, no writ). Even had this objection been preserved, we hold that the statements concerning the principal and interest balances were not conclusory. *See 8920 Corp. v. Alief Alamo Bank*, 722 S.W.2d 718, 720 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Sharpe v. Lomas Nettleton Fin. Corp.*, 601 S.W.2d 55, 57 (Tex.App.—Dallas 1980, writ ref'd n.r.e.).

### (b) Amount of Interest

Thompson complains that, in paragraph fifteen of his affidavit, Cattlett states that "Chrysler credited the foreclosure proceeds against the indebtedness, resulting in a deficiency ... with interest continuing to accrue at the highest rate allowed by law pursuant to paragraph 4 of *the note.*" (Emphasis added.) Thompson argues that the deficiency could be calculated by looking only to the Extension Agreement signed by the parties, which, he apparently contends, "superseded" the Note. Through this argument, Thompson is attempting to raise a fact issue concerning the amount of interest due.

The Extension Agreement was signed in December 1984 and set forth new payment terms. The payment terms do not mention a default interest rate, nor pre- and post-judgment interest. The trial court awarded $44,305.20 in pre-judgment interest. Cattlett stated that the pre-judgment interest due was $40,141.52 as of April 1, 1991,

and further accrued at a rate of $78.56 per day.[2]

In Texas, the execution of an "extension agreement" pertaining to an outstanding debt is generally treated as a new contract evidencing the existing debt. *See Summit Bank v. The Creative Cook*, 730 S.W.2d 343, 346 (Tex.App.—San Antonio 1987, no writ). However, where renewal notes or extensions are involved, the holder may sue either on the renewal note or on the original note. *Villareal v. Laredo Nat'l Bank*, 677 S.W.2d 600, 607 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.); *Smith v. First Pasadena State Bank*, 401 S.W.2d 123, 127 (Tex.App.—Houston [1st Dist.] 1966, no writ). This rule holds true unless there has been a proven novation.[3]

There is no presumption that the execution and delivery of a new note extinguishes the original paper. *Villareal*, 677 S.W.2d at 607. Therefore, unless it is proved that the parties intended to discharge the obligations under the existing note prior to renewal or extension, there is no discharge of the old note by the executing of an extension agreement. *Id.* The burden of proving the affirmative defense of novation is on Thompson. *Allied Chem. Corp. v. DeHavan*, 752 S.W.2d 155, 158–59 (Tex.App.—Houston [14th Dist.] 1988, writ denied).

Because novation was neither pleaded nor proved, Chrysler could sue on the Note rather than on the Extension Agreement. *Smith*, 401 S.W.2d at 127. Chrysler sued on the Note. Chrysler properly proved the amounts due under the Note. Thompson has failed to raise a fact issue with regard to the amount of interest due. He has failed to prove that the Note and Extension Agreement cannot be read together.[4] He has failed to plead and prove that the Extension Agreement supersedes the Note.

---

2. This figure is the per diem at 18% of the principal balance. Eighteen percent is the default interest rate contained in the Note.

3. Obviously, if there is a proven novation, the new note supersedes the old.

4. Had Thompson raised the issue of novation and whether the Extension Agreement extinguished the Note, Chrysler may have brought forth summary judgment evidence proving that it was not extinguished. He did not. Therefore, Chrysler was entitled to sue on the Note. *Smith*, 401 S.W.2d at 127.

### (c) Prior Excluded Testimony

 Thompson also objected to the Cattlett affidavit pursuant to rule 215(5) of the Texas Rules of Civil Procedure. He contended that Cattlett's affidavit testimony should be excluded because it was excluded in the prior suit in Denton County,[5] which was dismissed without prejudice. The record reflects that Thompson failed to obtain a ruling in the trial court in Dallas County on this objection to the Cattlett affidavit. Therefore, it is waived. TEX. R.APP.P. 52(a); *Wenco,* 783 S.W.2d at 665. Further, Thompson presented no summary judgment evidence of any ruling excluding Cattlett's testimony in the Denton County suit.

Even if Thompson had preserved error through proper summary judgment evidence, he has cited no authority in support of his argument. He relies on *Tri–M Erectors, Inc. v. Clearwater Constructor's, Inc.,* 788 S.W.2d 906 (Tex.App.—Austin 1990, writ denied). In *Tri–M,* a motion for sanctions filed by the defendant, Clearwater, was pending. It asked that Tri–M's suit be dismissed as a sanction for the failure of Tri–M's witness to appear for depositions. Tri–M then filed a notice of dismissal without prejudice. Clearwater filed a motion to dismiss the case with prejudice, which the trial court granted. Tri–M appealed and argued that the court had no power to dismiss with prejudice when Tri–M had already filed its notice of dismissal. The court of appeals disagreed and held that the trial court did have such power because the motion for sanctions was still pending when Tri–M sought the voluntary nonsuit. *Tri–M,* 788 S.W.2d at 907–08.

*Tri–M* does not stand for the proposition that sanctions rendered in a prior suit dismissed without prejudice are carried over to a new suit filed in a different county. Thompson has cited no authority so holding, and we find none. We hold that Chrysler has met its burden to prove the amount due. *Caruth,* 630 S.W.2d at 899.

**5.** Cattlett's testimony was allegedly excluded by the trial court in the earlier suit because Cattlett

### B. Proper Notice of Acceleration

#### 1. Law

 Absent a waiver, the holder of a note must demand payment and notify the obligor of its intent to accelerate and of the acceleration. *Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890, 892 (Tex.1991).

#### 2. Chrysler's Summary Judgment Evidence

In his affidavit, Cattlett states that default first occurred in October 1987. By letter dated December 28, 1987, Chrysler demanded that the default be cured. The letter provided that, "Failure to pay this delinquency within twenty days of the receipt of this letter will leave Chrysler First Business Credit Corporation no alternative but to accelerate the maturity date of the note and demand payment in full of the indebtedness." By letter dated January 28, 1988, Chrysler accelerated the debt. The summary judgment evidence shows that Chrysler demanded payment and notified Thompson of Chrysler's intent to accelerate and of the acceleration.

#### 3. Thompson's Contentions
##### (a) Need to Re-accelerate

 Thompson contends that (1) the lapse of almost two years since the notice of acceleration, (2) the intervening bankruptcy of the maker of the note, Marks Market, and (3) Chrysler's acceptance of payments made by Marks Market required Chrysler to serve new notices, demands, and accelerations. Thompson alleged that Chrysler "reinstated the debt" by accepting payments from Marks Market while Marks Market was in bankruptcy. Thompson contends that, by these acts, Chrysler waived the acceleration and created a duty to re-demand and re-accelerate.

The only evidence offered concerning "reinstatement" was Thompson's affidavit wherein he stated, "The note was reinstated as Chrysler accepted payments throughout the bankruptcy." Chrysler's summary judgment evidence shows that payments on

was not properly designated as a witness. *See* TEX.R.CIV.P. 215.

the note were to be $4006.93 per month. During the pendency of the bankruptcy, Marks Market made payments of $1500 per month pursuant to an agreement approved by the bankruptcy court. Marks Market stopped these payments, and the bankruptcy was dismissed. Chrysler then began foreclosure procedures without sending out additional demand letters.

There is no summary judgment evidence that the note was "reinstated." The evidence that Chrysler agreed to reduce scheduled payments in bankruptcy court does not raise a fact issue concerning whether Chrysler intended to declare the default waived and the debt reinstated. Thompson has cited no authority for his proposition that this raised a fact issue concerning whether acceleration was waived and whether Chrysler had a duty to re-accelerate.

### (b) Content of Notice

■ Thompson complains that the notice of default did not clearly state Chrysler's intent to accelerate the debt. In *Ogden v. Gibraltar Savings Association*, 640 S.W.2d 232 (Tex.1982), cited by Thompson, a letter stating that "Failure to cure the breach may result in acceleration" led to the holding that the mortgagee had not made clear to the mortgagor that it would unequivocally exercise its option of acceleration unless the default was cured. *Id.* at 234. The Texas Supreme Court held that the "may" language was not clear and unequivocal notice that Gibraltar would accelerate. Chrysler's letter in the case at bar was clear and unequivocal. It said that failure to pay would leave Chrysler "no alternative but to accelerate."

Thompson contends that "the balance" of the letters is "ineffective as a matter of law," without stating in which way it is ineffective. He cites *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890 (Tex.1991), and *Allen Sales & Servicenter, Inc. v. Ryan*, 525 S.W.2d 863 (Tex.1975), in support of this argument, but does not state how these cases apply to the facts. We are unable to determine the basis for the statement that the balance of the letters is ineffective.

### C. Valid Foreclosure Sale

#### 1. Law & Other Requirements

Section 51.002(a) of the Texas Property Code and paragraph fifteen of the deed of trust require that any foreclosure sale be a public sale at auction held between 10:00 a.m. and 4:00 p.m. on the first Tuesday of the month, at the county courthouse in which the land is located, in the area designated by the commissioner's court. Section 51.002(b) and paragraph fifteen of the deed of trust require that notice be given at least twenty-one days before the date of the sale (1) by posting at the courthouse door; (2) by filing a copy of the notice of sale in the county clerk's office; and (3) by certified mail, return receipt requested to each debtor obligated to pay the debt. TEX. PROP.CODE ANN. § 51.002(a), (b) (Vernon Supp.1992).

#### 2. Chrysler's Summary Judgment Evidence

In his affidavit, Robert Voelker, an attorney employed by Chrysler, stated that notice was given to Marks Market, Robert Marks, Charla Marks, and Thompson. The notice, in the form of a letter dated September 11, 1989, stated that the collateral would be sold at foreclosure sale on October 3, 1989. A notice of substitute trustee's sale specified that the sale would be held on October 3 at the area designated for foreclosure sales by the Denton County Commissioner's Court, to the highest bidder, between 10:00 a.m. and 1:00 p.m.

In her affidavit, Kathy Farruya, the substitute trustee, stated that, on September 11, 1989, a copy of the notice of sale was posted at the door of the Denton County Courthouse and that a copy was filed with the County Clerk of Denton County. Farruya stated that on October 3, 1989, at public auction, at the area designated for foreclosure sales by the Denton County Commissioner's Court, the collateral was sold to the highest bidder, Chrysler, for the sum of $287,000. Chrysler satisfied its burden to prove, by proper summary judg-

ment evidence, that a valid foreclosure sale was conducted.

### 3. Thompson's Contentions

#### (a) Failure to Record Trustee's Notice

In his response to the motion, Thompson contended that the foreclosure was irregular because the trustee's notice was not recorded in the deed records as "required" under the terms of the deed of trust. The deed of trust requires "filing of such notice [of substitute trustee's sale] of record in the deed records in the county in which the mortgaged property is located *as required by law.*" (Emphasis added.) In her affidavit, Kathy Disheroon, a title abstractor, interpreted the deed of trust to require the notice of substitute trustee sale to be filed in the permanent deed records of Denton County. She concluded that the deed of trust required this filing in addition to the filing of such notice as required by section 51.002(b)(2) of the property code.

Chrysler objected to this portion of the Disheroon affidavit because it stated a legal conclusion. The trial court sustained Chrysler's objections to Thompson's summary judgment evidence. We hold that the deed of trust does not impose any filing requirement in addition to the requirements of section 51.002(a) and (b) of the Texas Property Code, which Chrysler satisfied.

#### b. Grossly Inadequate Bid Price

Thompson contends that the foreclosure sale was not valid because the foreclosure bid price was "inadequate, unfair, and unreasonable." Thompson contends that Chrysler had a duty to credit him with an amount having a reasonable relationship to the fair market value of the property.

■ Mere inadequacy of consideration is not grounds for setting aside a trustee's sale if the sale was legally and fairly made. *Tarrant Sav. Ass'n v. Lucky Homes, Inc.,* 390 S.W.2d 473, 475 (Tex. 1965). There must be some evidence of irregularity, though slight, which must have caused or contributed to cause the property to be sold for a grossly inade-

quate price. *American Sav. & Loan Ass'n v. Musick,* 531 S.W.2d 581, 587 (Tex.1976).

Thompson argues that he is not seeking to set aside the foreclosure, but is seeking only to avoid a deficiency as a result of the foreclosure. He contends that he is entitled to rely on the legality and fairness of the trustee's sale and is not liable for a deficiency where there is irregularity or lack of commercial reasonableness, citing *Adams v. Waldorp,* 740 S.W.2d 32 (Tex. App.—El Paso 1987, no writ). Thompson contends that the bid price was grossly inadequate and that, therefore, Chrysler was not entitled to a summary judgment concerning the deficiency, citing *Farrell v. Hunt,* 714 S.W.2d 298 (Tex.1986); *Charter National Bank—Houston v. Stevens,* 781 S.W.2d 368 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *Halter v. Allied Merchants Bank,* 751 S.W.2d 286 (Tex. App.—Beaumont 1988, writ denied); and *FDIC v. Blanton,* 918 F.2d 524 (5th Cir. 1990).

*Adams* stands for the proposition that, where there is a lack of commercial reasonableness in the sale of collateral in a transaction governed by the UCC, there can be no deficiency. *Adams,* 740 S.W.2d at 33–34. It is not applicable to our case. *See Huddleston v. Texas Commerce Bank—Dallas,* 756 S.W.2d 343, 347 (Tex.App.—Dallas 1988, writ denied). *Farrell* is a wrongful foreclosure case where the note holder foreclosed even though the debtor was not in default. *Farrell,* 714 S.W.2d at 299. *Charter* was also a wrongful foreclosure case where there *were irregularities* in the foreclosure sale and where, because of that fact, the debtor received a credit for fair market value. *Charter,* 781 S.W.2d at 374–75. Our case is not a wrongful foreclosure case, nor were there irregularities in the foreclosure sale. *Blanton* also involved actual irregularities in the foreclosure sale. *Blanton,* 918 F.2d at 531. These cases are distinguishable for those reasons.

The language in *Halter* on which Thompson relies is dicta and contrary to *Tarrant County Ass'n v. Lucky Homes, Inc.* Therefore, we decline to follow it. *See*

*RTC v. Westridge Court,* 815 S.W.2d 327, 331 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Pentad Joint Venture v. First Nat'l Bank,* 797 S.W.2d 92, 97 (Tex. App.—Austin 1990, writ denied); *Greater Southwest Office Park v. Texas Commerce Bank,* 786 S.W.2d 386, 388–89 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Savers Fed. Sav. & Loan Ass'n v. Reetz,* 888 F.2d 1497, 1503–05 (5th Cir.1989).

The letter of Thomas Morey, Chrysler's appraiser, attached to the affidavit of Royce Coleman, indicates that Chrysler's appraisal showed that the property was valued at $410,000 on May 16, 1989, approximately five months before foreclosure.[6] Thompson has raised no fact issue regarding an irregularity in the sale causing the collateral to be sold for a "grossly inadequate price" entitling him to a credit for fair market value. We hold that a guarantor may not avoid a summary judgment on a deficiency claim by alleging inadequacy of bid price alone, where there has been no irregularity in the foreclosure sale. *See Westridge,* 815 S.W.2d at 331.

### D. Credit Given

Before a mortgagee is entitled to a judgment for any deficiency remaining on its note, it must also prove that it has given credit for the amount received at the trustee's sale and for any other legitimate credits. *Caruth,* 630 S.W.2d at 899. In his affidavit, Cattlett states that credit was given for the foreclosure proceeds as well as for a subsequent partial refund for the insurance premiums. Chrysler has proved that legitimate credits were given in its action for deficiency. *Id.*

We hold that Chrysler has met its summary judgment burden to prove that it is entitled to judgment as a matter of law on its deficiency action. We now address Thompson's other contentions regarding, *inter alia,* the validity of his guaranty.

### THOMPSON'S OTHER CONTENTIONS

### A. Thompson's Guaranty

■ Thompson contends that his guaranty was limited to a period of one year.

He alleged that he entered into an oral agreement with Chrysler, during the closing of the sale of the property by Thompson to Marks Market, whereby Thompson's guaranty would be limited to a period of one year. This was agreed to before he signed the guaranty, but it was not incorporated into the documents because of delays and because of the weather. In their affidavits, both Thompson and Charla Marks stated that such an oral agreement was reached limiting Thompson's guaranty to one year. Chrysler objected to this testimony based upon the parol-evidence rule. The trial court sustained the objection.

■ Paragraph sixteen of the guaranty provides, "This guaranty shall be released by creditor upon performance and payment in full of all obligations and indebtedness guaranteed herein." Any testimony that Thompson would be released at the end of one year contradicts or modifies the express terms of the guaranty. Parol evidence is not admissible to contradict or modify versions of the written guaranty agreement. *American Fiber Glass, Inc. v. General Elec. Credit Corp.,* 529 S.W.2d 298, 301 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.). Absent pleading and proof of ambiguity, fraud, accident, or mistake, a written agreement presumes that all prior agreements of the parties relating to the transaction have been merged into the written instrument. Its provisions will be enforced as written and cannot be added to, varied, or contradicted by parol testimony. *See Weinacht v. Phillips Coal Co.,* 673 S.W.2d 677, 679 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Thompson did not plead or offer proof of ambiguity, fraud, accident, or mistake.

■ In his response, Thompson sought reformation of the guaranty with respect to its time limitation. Parol evidence is admissible to reform a written instrument if there are allegations of mutual mistake or of unilateral mistake accompanied by

---

6. Chrysler purchased the property at the foreclosure sale for $287,000, which is approximately 70% of the $410,000 at which it had been valued.

fraud, trickery, or other inequitable conduct. *See First Nat'l Bank v. Jones,* 635 S.W.2d 950, 952–53 (Tex.App.—Eastland 1982, writ ref'd n.r.e.). Thompson failed to plead any of the above. We hold that Thompson has failed to raise a fact issue with regard to time limits or reformation concerning his guaranty.

### B. Specificity

In his brief on appeal, Thompson alleges that Chrysler's motion for summary judgment lacked specificity. However, Thompson failed to make this objection in his response in the trial court and may not make it for the first time on appeal. *C.S.R., Inc. v. Mobile Crane, Inc.,* 671 S.W.2d 638, 641 (Tex.App.—Corpus Christi 1989, no writ). Additionally, Thompson made a blanket statement that the motion is "not specific," and has not provided this Court with examples. We hold that this argument is waived. *See C.S.R.,* 671 S.W.2d at 641; Tex.R.Civ.P. 166a(c).

### C. Ambiguity

In his brief on appeal, Thompson argues that the Extension Agreement was "ambiguous." This allegation was not made in the trial court and may not be raised for the first time on appeal unless the complaint concerns Chrysler's failure to meet its summary judgment burden on an element of its deficiency cause of action. *C.S.R.,* 671 S.W.2d at 641. Thompson apparently is arguing that the amount of interest due under the Extension Agreement was not clear and that Chrysler had the burden to prove how it calculated interest due and paid. However, we have held that Chrysler has proved the amount due under the Note with proper summary judgment proof. We reject this contention.

### D. Attorney's Fees

In his brief, Thompson contends that there was error concerning Chrysler's non-suit on its attorney's-fees claim. He contends that this Court should address the issue of the exclusion of evidence "in the event of a remand" on the attorney's-fees issue. In his response to the motion for summary judgment, he disputed the amount and reasonableness of Chrysler's attorney's fees. Thompson attempted to raise a fact issue with regard to Chrysler's attorney's fees by way of the affidavit of Royce Coleman, his attorney.

Chrysler filed a motion to non-suit its claim for attorney's fees, as it had a right to do. This allowed the trial court to enter a final summary judgment. The trial court properly non-suited Chrysler's claims for attorney's fees. The non-suit was without prejudice. Any issue concerning evidence on the attorney's-fees claim and whether the attorney's-fees claim will be re-filed is not before us because that claim was non-suited. We perceive no error.

We overrule Thompson's point of error. We affirm the judgment of the trial court.