Fitzgerald v. Harry

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-330-CV

DANNY FITZGERALD APPELLANT

V.

EROY HARRY APPELLEE

------------

FROM THE 67
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

This is an appeal from a summary judgment entered in a wrongful foreclosure suit.  Appellant Danny Fitzgerald claims that the trial court erred by denying his motion for partial summary judgment and by granting Appellee Eroy Harry’s motion for summary judgment.  In his first two points, Fitzgerald complains that Harry was not entitled to summary judgment because Fitzgerald was not afforded proper notice and opportunity to cure under section 51.002 of the property code, and because fact issues exist about whether Harry waived or abandoned any alleged accelerations prior to January 26, 2001.  In his third point, Fitzgerald complains that the trial court erred by denying his motion for partial summary judgment because he proved wrongful foreclosure as a matter of law.  We will affirm.

II.  Background Facts

In 1987, Fitzgerald and his wife
(footnote: 2) executed an $80,000 note payable to Eroy Harry in exchange for the purchase of real property—a residence located at 611 Ruth in Kennedale, Texas.  To secure payment of the $80,000 note, Fitzgerald granted Harry a deed of trust on the residence.  In the event that Fitzgerald defaulted on the note or failed to perform any of his obligations as grantor, the deed of trust empowered Harry to declare the unpaid principal balance and earned interest on the note immediately due and to pursue foreclosure proceedings as provided in the Texas Property Code. 

In late 1999, Fitzgerald defaulted on the note.  By letters dated September 24, 1999 and October 14, 1999, Harry notified Fitzgerald of the default and gave notice of his intent to accelerate Fitzgerald’s payments due under the note.
(footnote: 3)  By certified mail dated November 15, 1999, Fitzgerald was notified that, due to his failure to cure the delinquency as previously instructed, the note had been accelerated, and the residence would be sold at a foreclosure sale on December 7, 1999.

Fitzgerald filed a voluntary petition for bankruptcy protection on December 3, 1999, preventing the scheduled foreclosure sale from taking place.  The bankruptcy court dismissed the petition on May 24, 2000, due to Fitzgerald’s “fail[ure] to timely pay the Trustee pre-confirmation payments specified in the Debtor’s Preliminary Plan.”  The final accounting provided by the bankruptcy trustee lists Harry as a secured creditor and indicates that no payments were made toward the outstanding debt while the bankruptcy petition was pending.

Soon after the bankruptcy petition was dismissed, Fitzgerald was notified by certified mail of the continuing delinquency on the note.  The letter, dated June 1, 2000, informed Fitzgerald that he remained delinquent in the payment of the May through December 1999 installments on the note as well as the March through June 2000 installments, stated the total amount of the delinquency, and demanded full payment by June 12, 2000.  Fitzgerald failed to cure the default and was sent notice of acceleration and notice of a foreclosure sale scheduled for July 4 by certified mail on June 13, 2000.  To avoid losing his residence at the foreclosure sale, Fitzgerald filed another voluntary petition for bankruptcy protection on June 30, 2000.  The bankruptcy court dismissed this petition on December 28, 2000, again due to Fitzgerald’s failure to timely make the required pre-confirmation payments to the bankruptcy trustee.  The bankruptcy court issued notices of dismissal to Fitzgerald’s creditors on January 12, 2001.

On January 26, 2001, the substitute trustee under the deed of trust again contacted Fitzgerald regarding the delinquent status of the note.  The letter stated that Fitzgerald remained delinquent in the May through December 1999 and September through December 2000 installments on the note and in the payment of ad valorem taxes on the property and demanded full payment by February 9, 2001.  Fitzgerald did not cure the delinquency and was notified by certified mail on February 9, 2001, that the note had been accelerated and that a foreclosure sale would be held on March 6, 2001.  Fitzgerald took no further action, and Harry purchased the residence at the March 6 foreclosure sale.

Fitzgerald filed suit against Harry alleging wrongful foreclosure and DTPA violations, which Harry generally denied.  Fitzgerald then filed a motion for partial summary judgment on his wrongful foreclosure claim, alleging that, as a matter of law, Harry had failed to provide him with proper notice of intent to accelerate the debt and twenty days to cure the default as required by the property code.  Harry responded and filed a competing motion for summary judgment asserting that the March 6, 2001 foreclosure was not wrongful and that, therefore, Fitzgerald’s claims could not succeed.  The trial court granted Harry’s motion for summary judgment and denied Fitzgerald’s motion for partial summary judgment on July 23, 2002.

III.  Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
S.W. Elec. Power Co. v. Grant
,
 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
S.W. Elec. Power Co.
,
 
73 S.W.3d at 215;
 Rhone-Poulenc, Inc. v. Steel
, 997 S.W.2d 217, 223 (Tex. 1999); 
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).  Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.  
Great Am.
, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded, and the evidence favorable to the nonmovant is accepted as true.  
Rhone-Poulenc
, 997 S.W.2d at 223; 
Harwell v. State Farm Mut. Auto. Ins. Co.
, 896 S.W.2d 170, 173 (Tex. 1995).  Evidence that favors the movant’s position will not be considered unless it is uncontroverted.  
Great Am.
, 391 S.W.2d at 47.

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant’s cause of action or defense as a matter of law.  
Clear Creek Basin
, 589 S.W.2d at 678.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff’s cause of action cannot be established.  
Elliott-Williams Co. v. Diaz
, 9 S.W.3d 801, 803 (Tex. 1999).  The defendant as movant must present summary judgment evidence that negates an element of the plaintiff’s claim. 
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).  Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.  
Id.

IV.  Discussion

A.  Notice of Default and Opportunity to Cure

In his first point, Fitzgerald complains that the trial court erred by granting Harry’s motion for summary judgment because Fitzgerald was not provided sufficient notice of intent to accelerate the note and opportunity to cure under section 51.002(d) of the property code.  
Tex. Prop. Code Ann.
 § 51.002 (Vernon 1995)  Section 51.002 of the property code governs the sale of real property under a contract lien. 
 
Id
.  It provides in part that:

(b) Notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale:

. . . .

(3) by the holder of the debt to which the power of sale is related serving written notice of the sale by certified mail on each debtor who, according to the records of the holder of the debt, is obligated to pay the debt.

. . . .

(d) Notwithstanding any agreement to the contrary, the holder of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor’s residence with 
written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given
 under Subsection (b).

Id
.
 § 51.002(b), (d) (emphasis added).

Fitzgerald argues that none of the demand letters contained in the appellate record complied with section 51.002 because they failed to offer him twenty days to cure the alleged default.  
Id
.
 § 51.002.  However, undisputed summary judgment evidence in the record clearly establishes that Fitzgerald did receive the required twenty days’ notice and opportunity to cure.

The November 15, 1999 notice of acceleration and notice of foreclosure sale references the fact that Fitzgerald was notified in writing of the note’s delinquent status on September 24, 1999.  This letter indicates that the September 24, 1999 notice of delinquency gave Fitzgerald until October 25, 1999, to cure—granting Fitzgerald a thirty-day period within which to cure the default and prevent acceleration of the note.  Fitzgerald does not contend that the September 24, 1999 notice of default was not actually given; in fact, he acknowledged receiving the notice while under oath at his deposition.  Thus, Fitzgerald admitted receipt of 
more
 than the twenty day opportunity to cure required by section 51.002(d).  
Id
.
 § 51.002(d)

Harry’s first foreclosure attempt following this notice was prevented by Fitzgerald’s December 3, 1999 bankruptcy petition and attendant automatic stay.  Thereafter, Fitzgerald was twice provided with additional time to cure the default and avoid continuation of foreclosure proceedings against him.  The record establishes that Fitzgerald was notified of the note’s delinquent status on June 1, 2000, and again on January 26, 2001, after the dismissal of his second bankruptcy petition.  These two letters provided Fitzgerald with twelve days and fourteen days, respectively, of additional time to cure the delinquency before foreclosure proceedings would recommence.  Although neither of these demand letters, standing alone, provide the required twenty-day opportunity to cure, Fitzgerald cites no authority for the proposition that bankruptcy restarts the timetable of notice of default and opportunity to cure under the property code.  In fact, neither the automatic stay provision of the bankruptcy code nor applicable case law supports such a conclusion.  
See 
11 U.S.C.A. § 362 (West 1993 & Supp. 2003); 
see also Thompson v. Chrysler First Bus. Credit Corp.
, 840 S.W.2d 25, 31 (Tex. App.—Dallas 1992, no writ) (approving creditor’s action of proceeding with foreclosure immediately upon dismissal of bankruptcy petition without making any further demand upon debtor).  The summary judgment evidence before us conclusively establishes that Harry effectively accelerated the note before Fitzgerald’s December 1999 bankruptcy.  Harry was not required to repeatedly provide notice of default and an additional twenty days to cure thereafter.  
See Thompson
, 840 S.W.2d at 31.

Although the September 24, 1999 notice is not in the clerk’s record, this omission is not evidence that the September 24, 1999 notice was inadequate, as Fitzgerald seems to claim.  Fitzgerald confirmed under oath that he received the September 24, 1999 notice of default and opportunity to cure as referenced in the November 15, 1999 notice of acceleration letter, and he has not alleged any specific deficiency in the notice.  Even viewing the evidence in the light most favorable to Fitzgerald, we cannot create a deficiency where none is reflected in the record.  The summary judgment evidence in the record, including Fitzgerald’s own testimony, conclusively establishes as a matter of law that Fitzgerald received notice of default and more than twenty days’ opportunity to cure before foreclosure proceedings were instigated in 1999.  Consequently, we hold that the trial court properly granted Harry’s motion for summary judgment.  We overrule Fitzgerald’s first point.

B.  Waiver/Abandonment of Acceleration

In his second point, Fitzgerald argues that Harry abandoned any acceleration of the note before January 26, 2001.  He contends that the use of future tense in the January 2001 letter in the phrase “In the event you do not pay your note payments . . . your unpaid note balance will be accelerated” indicates that any previous acceleration had been waived or abandoned. Fitzgerald also asserts that he made payments on the note after it had been allegedly accelerated in 1999 and 2000, thus proving Harry’s abandonment of those accelerations.

“Even when a noteholder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments 
without exacting any remedies available to it
 upon declared maturity.” 
 
Holy Cross Church of God in Christ v. Wolf
, 44 S.W.3d 562, 566-67 (Tex. 2001) (emphasis added).  The summary judgment evidence before us conclusively establishes that Harry continuously pursued his attempts to secure full payment on the note or to foreclose upon the property from the time he first notified Fitzgerald of the default in September 1999 until the date of foreclosure in March 2002.  Harry clearly and unequivocally notified Fitzgerald of the delinquency and his intent to accelerate the note in September 1999, as Fitzgerald himself admitted under oath.  Harry took steps toward foreclosure in 1999, sending the required notice and scheduling a foreclosure sale.  Following the dismissal of each of Fitzgerald’s bankruptcy petitions, Harry expeditiously resumed his attempts to obtain full payment on the note or move forward again with foreclosure.  And, after Fitzgerald filed his second bankruptcy petition preventing foreclosure, Harry filed a motion to have the automatic stay lifted so that he could proceed with the sale.  Thus, contrary to Fitzgerald’s assertions, the record highlights Harry’s unflagging persistence in pursuit of foreclosure after the initial acceleration of the note.  Neither the wording of the last-chance demand letter nor Fitzgerald’s vague assertion in his deposition that Harry accepted late payments at some point raises a genuine issue of material fact controverting Harry’s consistent attempts to “exact the remedies available to” him after accelerating on the note.  
See Thompson
, 840 S.W.2d at 30-31 (concluding that in spite of two-year lapse since notice of acceleration, intervening bankruptcy of maker of note, and creditor’s acceptance of payments during that time, that creditor was under no duty to re-demand and re-accelerate note after bankruptcy dismissed).  We hold that no genuine issue of material fact regarding abandonment of acceleration was raised in this case.  Fitzgerald’s second point is overruled.

C.  Fitzgerald’s Motion for Partial Summary Judgment

In his third and final point, Fitzgerald complains that the trial court erred by denying his motion for partial summary judgment on the issue of wrongful foreclosure based upon his arguments in points one and two above.  In light of our holding above that Harry conclusively established his right to summary judgment and that no fact issue exists regarding abandonment of acceleration, we hold that Fitzgerald was not entitled to partial summary judgment on his wrongful foreclosure claim.  We overrule Fitzgerald’s third point.

V.  Conclusion

Having overruled each of Fitzgerald’s points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL F: CAYCE, C.J.; GARDNER, and WALKER, JJ.

DELIVERED:
 September 18, 2003

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Fitzgerald and his wife are now divorced.  She is not a party to this action.

3:
Although referenced repeatedly in the summary judgment evidence, the actual letters are not contained in the record before us.