**YASUDA FIRE AND MARINE INSURANCE COMPANY OF AMERICA and Sompo Japan Insurance Co. of America, Appellants**

v.

**Miller CRIACO d/b/a Criaco & Corteguera, Appellee.**

No. 14–05–00851–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 7, 2007.

---

Steven James Anderson, Amy Elizabeth Stewart, J. Kevin Kindred, for appellants.

Adam P. Criaco, Peter Michael Kelly, Houston, for appellees.

## MAJORITY OPINION

KEM THOMPSON FROST, Justice.

Appellee is a law firm that represented a personal-injury claimant who sought to recover damages sustained in a two-car collision. After recovering on a claim against the driver of the other car, the law firm's client filed suit against an insurance company that provided underinsured-motorist coverage in favor of the client. To settle that case, the client and the insurance company first entered into a letter agreement under Texas Rule of Civil Procedure 11, followed by a settlement agreement and release. After the insurance company paid a large settlement to the law firm and its client, the law firm filed this suit against the insurance company asserting that the Rule 11 letter required the insurance company to pay the workers' compensation lien to a nonparty insurance adjuster and that the law firm was entitled to receive one-third of this amount as attorney's fees for its recovery of the workers' compensation lien. The trial court granted the law firm's motion for final summary judgment and denied the insurance company's cross-motion for summary judgment.

On appeal, the panel is divided on the issue of the court's jurisdiction to hear this case. Although the law firm was neither a party nor a third-party beneficiary entitled to enforce the Rule 11 letter or the settlement agreement, this inability to enforce these contracts did not deprive the trial court, and does not deprive this court, of jurisdiction. Under binding precedent, this matter goes to the merits of the law firm's claims rather than the jurisdiction of the trial court and this court to hear these claims. Because the issue is not truly a jurisdictional one and because the insurance company did not raise this issue in the trial court, this court cannot reverse on this basis. Nonetheless, the insurance company is correct in its assertion that the law firm's contract claims fail as a matter of law based on the terms of the settlement agreement and release. Accordingly, we reverse the trial court's judgment and render judgment that the law firm take nothing on its claims.

### Factual and Procedural Background

Charles Robinson was injured in a car accident while in the course and scope of his employment with Tri–Gas, Inc. Appellee Miller Criaco d/b/a Criaco & Corteguera ("Criaco") provided legal representation to Robinson under a contingency-fee agreement as to his claims regarding these personal injuries. After settling his claims against the driver of the other car for her insurance-policy limits, Robinson, repre-

sented by Criaco, filed suit against appellant Yasuda Fire & Marine Insurance Company of America and its successor company Sompo Japan Insurance Co. of America (collectively, "Sompo"), asserting claims based on the underinsured-motorist coverage ("UIM Coverage") provided by Sompo on vehicles driven by Tri–Gas, Inc.'s employees in the course and scope of employment. On appeal, it is undisputed that Sompo was the insurer both for the UIM coverage and for Tri–Gas's workers' compensation policy.[1] Sompo paid at least $81,414.19 based on Robinson's workers' compensation claim, and therefore, Sompo had a workers' compensation lien in this amount on Robinson's recovery from other sources, such as the UIM coverage provided by Sompo.

Counsel for Robinson and counsel for Sompo signed a Rule 11 letter in the lawsuit over UIM Coverage (hereinafter "Rule 11 Letter"). The body of this letter states in its entirety:

> The following will serve as our Rule 11 Agreement regarding the resolution of the above-referenced case. Plaintiff will release any and all claims that exist against Defendants, which also includes the Defendants that have not yet been served or appeared in this matter. Defendants will tender the sum of $385,000.00 to this office and Defendants will repay and be responsible for payment of the outstanding workers [sic] compensation lien. All parties will bear their own expenses. If this is a correct understanding of our agreement, please sign below and return this letter to our office, so that we may notify the Court

of our settlement and cancel the upcoming scheduling conference.

About a month later, Robinson signed a "Compromise Settlement Agreement and Release" (hereinafter "Settlement Agreement"), which states that the parties to the agreement are Robinson and Sompo.[2] The Settlement Agreement also states that it is a full settlement and discharge and a fully binding release of all of Robinson's claims against Sompo for UIM Coverage. In consideration of Sompo's payment of $385,000 to Robinson, Robinson completely released and forever discharged Sompo from any and all claims, including workers' compensation claims, rights, damages, costs, and expenses of any nature whatsoever that Robinson has in any way growing out of the occurrence made the basis of Robinson's suit. Robinson agreed to dismiss with prejudice his lawsuit against Sompo. Robinson also represented that there were no outstanding liens or that if there were any such liens, Robinson agreed to indemnify Sompo against these liens. However, the parties exempted from this representation and indemnification provision the outstanding workers' compensation lien (hereinafter "Lien"), which the parties agreed "will be the responsibility of [Sompo]."

Criaco subsequently filed this lawsuit, alleging in pertinent part, as follows:

- Criaco represented to Sompo that the Lien would be addressed and satisfied by Criaco's efforts.
- Under the Rule 11 Letter and the Settlement Agreement, Robinson and Sompo expressly agreed that the Lien being advanced by Cunningham Lind-

---

1. In the trial court, Criaco's position on this issue was not clear; however, on appeal Criaco has not contradicted the statement of this fact in Sompo's appellate brief. *See* TEX. R.APP. P. 38.1(f). In addition, Criaco has affirmatively stated this fact in its brief.

2. The agreement also states that defendants Anthony Jewkes and Terry Flynn are parties; however, this is not material to the issues in this appeal.

sey U.S., Inc. (the workers' compensation subrogation adjuster) would be paid by Sompo.

- Criaco contacted Cunningham Lindsey U.S., Inc. (hereinafter "Cunningham") to verify the Lien total, and Criaco verified in writing that it would receive a $27,000 attorney's fee for recovering the Lien.
- After settlement and after Criaco tried to secure payment of the Lien, Sompo contacted Cunningham and told it that Sompo would now handle the Lien. Sompo fired Cunningham.
- Sompo now asserts that any Lien has been waived.
- Sompo has breached its obligation under the Rule 11 Letter and the Settlement Agreement to pay the Lien.
- Criaco seeks enforcement of these contracts and an order that Sompo tender to Cunningham[3] the full amount of the Lien.
- Criaco seeks its attorney's fees for this contract case under Chapter 38 of the Texas Civil Practice and Remedies Code.

Criaco filed a motion for summary judgment in which it sought specific performance of the provisions of the Rule 11 Letter and Settlement Agreement. Criaco asserted that these agreements are unambiguous and require Sompo to pay the full amount of the Lien to Cunningham. According to Criaco, after the Settlement Agreement was signed and the case dismissed, Sompo, rather than comply with this alleged contractual obligation, decided to fire Cunningham (the subrogation adjuster) and claim that the Lien was waived. Criaco has asserted that, before Sompo fired Cunningham, Criaco agreed to secure payment of the Lien for Cunningham and that Criaco effectively obtained this payment when the Rule 11 Letter and the Settlement Agreement were executed. According to Criaco, there was an agreement that Sompo would pay the $81,414.19 Lien and that Criaco would receive one-third of this amount as its statutory attorney's fee. Criaco asserted that the trial court, as a matter of law, should enforce the agreements and order Sompo to pay $81,414.19 to Cunningham or, alternatively, the court should order Sompo to pay one-third of this amount directly to Criaco.

Sompo filed a cross-motion seeking a final summary judgment in its favor. Sompo asserted that the Settlement Agreement supersedes the Rule 11 Letter and precludes Criaco's claims. Sompo also stated that, although Criaco has never specifically referred to section 417.003 of the Texas Labor Code, his claims are dependent on that statute. *See* TEX. LAB.CODE ANN. § 417.003 (Vernon 2006). However, Sompo claims that Criaco cannot recover under this statute because Sompo's interest was actively represented by an attorney in the UIM Coverage lawsuit in that Sompo was a defendant represented by counsel other than Criaco. *See id* § 417.003(a) ("An insurance carrier whose interest is not actively represented by an attorney in a third-party action shall pay a fee to an attorney representing the claimant . . .").

The trial court denied Sompo's motion and granted Criaco's motion, ordering Sompo to tender either $81,414.19 to Cunningham or $27,000 to Criaco, the latter amount being the sum the trial court stated reflects "the attorney's fees generated by the recovery of the workers' compensation lien." The trial court later made its judgment final and added an award of attorney's fees to Criaco for bringing this

---

3. Cunningham was not a party to any of these lawsuits.

action. On appeal, Sompo asserts that (1) Chapter 417 of the Texas Labor Code does not support the award of attorney's fees to Criaco; and (2) the law firm's contract claims fail as a matter of law based on the terms of the Settlement Agreement.

**Does the law firm's inability to enforce the Rule 11 Letter and the Settlement Agreement deprive the trial court and this court of jurisdiction?**

■ In this suit, Criaco seeks to enforce the Rule 11 Letter and the Settlement Agreement. Under the unambiguous language of these contracts, Criaco is not a party to these contracts or a third-party beneficiary entitled to enforce these contracts. Although Sompo did not raise this issue in the trial court, our dissenting colleague concludes that Criaco lacks standing and therefore this court and the trial court lack jurisdiction. This issue is not one that affects the court's power to make a legal decision or enter a judgment, and it is not jurisdictional. Although lawyers and courts occasionally state informally that an entity has no "standing" to enforce a contract if that entity is not a party to the contract or a third-party beneficiary of it, such an entity's inability to sue goes to the merits and does not deprive courts of

jurisdiction.[4] *See MCI Telecomm. Corp. v. Texas Utils. Elec. Co.,* 995 S.W.2d 647, 650–54 (Tex.1999) (concluding that entity was neither party nor third-party beneficiary entitled to sue on contract and reversing and rendering a take-nothing judgment on the merits rather than a dismissal for lack of jurisdiction); *State Farm Lloyds Ins. Co. v. Maldonado,* 963 S.W.2d 38, 40–42 (Tex.1998); (same); *Rivera v. South Green Ltd. P'ship,* 208 S.W.3d 12, 22–23 (Tex.App.-Houston [14th Dist.] 2006, pet. filed) (affirming summary judgment dismissing contract claim on the merits because plaintiff was neither party nor third-party beneficiary entitled to sue on contract). Therefore, this court cannot properly dismiss based on lack of jurisdiction. Further, because this issue is not jurisdictional and because Sompo failed to raise it in the trial court, this court cannot reverse the trial court's judgment on this basis.

**Does the Settlement Agreement supersede the Rule 11 Letter and preclude the law firm's contract claims?**

■ Under the Rule 11 Letter, Sompo "will repay and be responsible for payment

4. Our dissenting colleague cites several cases that do not involve any issue as to whether an entity can enforce a contract. *See Sierra Club v. Morton,* 405 U.S. 727, 729–40, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (holding Sierra Club lacked standing under Administrative Procedure Act to seek declaratory judgment and injunction based on its claims that development plan violated federal laws and regulations); *Austin Nursing Center, Inc. v. Lovato,* 171 S.W.3d 845, 849–50 (Tex.2005) (holding that decedent's estate had standing to pursue survival claim); *Brown v. Todd,* 53 S.W.3d 297, 306 (Tex.2001) (involving issue of standing to challenge mayor's executive order); *Douglas v. Delp,* 987 S.W.2d 879, 882 (Tex. 1999) (holding that plaintiff who had filed bankruptcy petition had no standing to assert malpractice claims in state court); *Texas Ass'n of Business v. Texas Air Control Bd.,* 852

S.W.2d 440, 443–48 (Tex.1993) (holding that party had standing to seek declaration that statutes violated various provisions of Texas Constitution); *Gleason v. Taub,* 180 S.W.3d 711, 712–15 (Tex.App.-Fort Worth 2005, pet. denied) (holding property owners had standing to assert claims for injury to real property and trespass). In addition, our dissenting colleague cites the *West* case, which supports the majority opinion rather than the dissenting opinion in this case. *See West v. Brenntag Southwest, Inc.,* 168 S.W.3d 327, 330–39 (Tex. App.-Texarkana 2005, pet. denied) (reversing and rendering a judgment of dismissal as to negligence and nuisance claims as to which landowner lacked standing and reversing and rendering a take-nothing judgment on the merits as to the landowner's contract claim because the landowner was not a party to the contract upon which it sued).

of the outstanding workers [sic] compensation lien." Criaco asserts that this language requires Sompo to pay $81,414.19 to Cunningham and that receipt of this payment would constitute a recovery of the Lien, from which Criaco allegedly would be entitled to attorney's fees under section 417.003 of the Texas Labor Code. *See* TEX. LAB.CODE ANN. § 417.003. Criaco then asserts that the Settlement Agreement has no express merger clause and that it is consistent with and does not supersede the Rule 11 Letter.

█ The Settlement Agreement does not contain an explicit merger clause; however, under Texas law, even in the absence of an express merger clause, all prior oral and written agreements are presumed to merge into a subsequent written contract. *See Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 31 (Tex.1958); *Thompson v. Chrysler First Business Credit Corp.,* 840 S.W.2d 25, 33 (Tex.App.-Dallas 1992, no writ); *Chambers v. Huggins,* 709 S.W.2d 219, 222 (Tex.App.-Houston [14th Dist.] 1986, no writ). Nothing in the record rebuts this presumption, and Criaco has not alleged that the execution of the Settlement Agreement was the result of fraud, accident, or mistake. Therefore, the Rule 11 Letter merged into the Settlement Agreement, and the Rule 11 Letter cannot add to, subtract, or vary the obligations stated in the unambiguous language of the Settlement Agreement. *See Hubacek,* 317 S.W.2d at 31; *Thompson,* 840 S.W.2d at 33; *Chambers,* 709 S.W.2d at 222.

Under the Settlement Agreement, there is no statement that Sompo will pay the Lien to Cunningham or that Sompo will pay the Lien at all. The Settlement Agreement states that the "the outstanding worker's [sic] compensation lien, if any, . . . will be the responsibility of [Sompo]." Because Sompo was the holder of the Lien, this language unambiguously states that Sompo is allowing payment of the entire $385,000 settlement to Robinson without payment of the Lien out of these funds. The Settlement Agreement does not impose an obligation on Sompo to pay or tender payment to any entity to satisfy the Lien. Likewise, the Settlement Agreement does not state that there will be a recovery of the Lien or that Criaco is entitled to attorney's fees based on the payment or recovery of the Lien. Criaco asserts that the Rule 11 Letter is consistent with the Settlement Agreement. However, presuming, without deciding, that the Rule 11 Letter requires Sompo to pay $81,414.19 to Cunningham, as asserted by Criaco in its motion for summary judgment, this obligation contradicts the unambiguous language of the Settlement Agreement regarding the Lien.[5]

---

5. Criaco also argued in the trial court that Cunningham agreed that Criaco would secure payment of the Lien for Cunningham and therefore be entitled to attorney's fees for obtaining this recovery. However, Criaco's summary-judgment evidence does not prove such an agreement. Criaco relies on correspondence with Cunningham; however, the letters sent by Cunningham to Criaco before the execution of the Settlement Agreement state only (1) that Cunningham handles the workers' compensation adjusting and that Terry Flynn handles the UIM adjusting, and (2) the total amount of the Lien. Criaco also relies on a letter sent by Cunningham to Criaco about four months after execution of the Settlement Agreement. Criaco claims that Cunningham admitted that it was statutorily obligated to pay $27,000 in attorney's fees in this letter. Because of the timing of this letter, it cannot constitute part of any alleged agreement regarding the settlement. Further, to the extent Criaco sought to use this letter as an admission by Sompo, Criaco did not plead and conclusively prove that Cunningham's statement was binding on Sompo under agency principles. Even if Sompo had stated that it was obligated to pay these fees four months after the Settlement Agreement, that statement would not be a judicial admis-

Sompo correctly asserted in the trial court that the Settlement Agreement precludes the recovery sought by Criaco in this case. Therefore, the trial court erred in granting Criaco's motion for summary judgment and denying Sompo's motion for summary judgment.[6] Accordingly, we sustain Sompo's two issues on appeal, reverse the trial court's judgment, and render judgment that Criaco take nothing on its claims.

EDELMAN, J., dissenting.

A plaintiff must have standing to bring a lawsuit. *Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 848 (Tex.2005). An opinion issued in a case brought by a party who lacks standing is an advisory opinion which courts are constitutionally prohibited from issuing by the separation of powers doctrine. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445–46 (Tex.1993). Therefore, without standing, a court lacks subject matter jurisdiction to hear the case. *Lovato,* 171 S.W.3d at 849. Standing cannot be waived and may be raised at any time,[1] including for the first time on appeal by either a party or the court *sua sponte. Tex. Ass'n of Bus.,* 852 S.W.2d at 445–46. If a trial court lacks subject matter jurisdiction, an appellate court may make no order other than reversing the judgment of the trial court and ordering the case dismissed. *City of Garland v. Louton,* 691 S.W.2d 603, 605 (Tex. 1985); *see Douglas v. Delp,* 987 S.W.2d 879, 882 (Tex.1999).

Standing deals with whether a litigant is the proper person to bring the lawsuit. *West v. Brenntag Sw., Inc.,* 168 S.W.3d 327, 334 (Tex.App.-Texarkana 2005, pet. denied). That is, whether the party has a sufficient stake in an otherwise justiciable controversy to obtain a judicial resolution of his claim. *Sierra Club v. Morton,* 405 U.S. 727, 731–32, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Without a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate. *Gleason v. Taub,* 180 S.W.3d 711, 713 (Tex.App.-Fort Worth 2005, pet. denied). A person may not sue for the breach of a contract unless he is a party or third-party beneficiary to the contract. *See, e.g., Williams v. Eggleston,* 170 U.S. 304, 309, 18 S.Ct. 617, 42 L.Ed. 1047 (1898); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 651 (Tex.1999); *House v. Houston Waterworks Co.,* 88 Tex. 233, 31 S.W. 179, 179 (1895).

In this case, Criaco sued for the breach of a Rule 11 agreement and a settlement agreement. The Rule 11 agreement consists of a letter from Criaco to counsel for Sompo, stating, in part:

> The following will serve as our Rule 11 Agreement regarding the resolution of the [UIM lawsuit]. [Robinson] will release any and all claims that exist against Defendants.... Defendants will tender the sum of $385,000.00 to this office and Defendants will repay and be responsible for payment of the outstanding workers compensation lien.

sion and would not prevent Sompo from changing its position based on the unambiguous language of the Settlement Agreement.

**6.** Criaco did not expressly address section 417.003 of the Texas Labor Code as a basis for recovery in its motion for summary judgment, but even if it had, this statute would have afforded no relief. Sompo correctly asserts that Criaco cannot recover under this

statute because, among other things, Sompo was not "[a]n insurance carrier whose interest [was] not actively represented by an attorney," given that Sompo was represented by counsel other than Criaco in the UIM Coverage action. *See* TEX. LAB CODE ANN. § 417.003.

**1.** *West Orange–Cove Consol. Indep. Sch. Dist. v. Alanis,* 107 S.W.3d 558, 583 (Tex.2003).

The settlement agreement states that it is entered into between the parties to the UIM lawsuit, including Robinson and Sompo, but not Criaco.[2] Among other things, the settlement agreement contains a warranty by Robinson and his attorney that there either are no outstanding liens or claims for attorney's fees, or that any such liens and claims will be satisfied out of the settlement proceeds, except "outstanding worker's compensation liens, if any, which will be the responsibility of The Released Parties." The settlement agreement obligates Sompo to make one payment of $385,000 to Robinson and Criaco.[3]

After filing this lawsuit, Criaco filed a succession of motions for summary judgment, asserting a claim for breach of the agreements. The motions contend that the workers' compensation lien amount of $81,414.19 was payable to Cunningham Lindsay, the subrogation entity, and that Criaco was entitled to receive $27,000 of that amount as a statutory attorney's fee.[4] The trial court ultimately awarded Criaco

---

**2.** The only copies of this agreement in our record are signed only by Robinson.

**3.** It is undisputed that Sompo made this payment.

**4.** Where, as here, an employee, who has been injured and received workers compensation benefits, also seeks damages from a third-party tortfeasor, the workers' compensation carrier is subrogated to the rights of the employee to the extent of the benefits it has paid. *See* Tex. Lab.Code Ann. § 417.001(a), (b) (Vernon 2006); *Tex. Workers' Comp. Ins. Fund v. Alcorta*, 989 S.W.2d 849, 851 (Tex. App.-San Antonio 1999, no pet.). In that event, the net amount recovered by the claimant in the third-party action is applied to reimburse the workers' compensation carrier for the benefits it has paid. Tex. Lab.Code Ann. § 417.002(a) (Vernon 2006). In addition:

(a) An insurance carrier whose interest is not actively represented by an attorney in a third-party action shall pay a fee to an attorney representing the claimant in the amount agreed on between the attorney and the insurance carrier. In the absence of an agreement, the court shall award to the attorney *payable out of the insurance carrier's recovery:*

(1) a reasonable fee for *recovery of the insurance carrier's interest* that may not exceed one-third of the insurance carriers recovery; . . . .
 \* \* \*
(d) For purposes of determining the amount of an attorney's fee under this section, *only the amount recovered* for benefits . . . that have been paid by the insurance carrier may be considered.

Tex. Lab.Code Ann. § 417.003(a), (d) (Vernon 2006) (emphasis added). Reading sections 417.001–.003 together, an award of attorney's fees under section 417.003 requires both that an amount be recovered by a subrogated insurance carrier, and that it be recovered from the amount recovered by the claimant in the third-party action. In this way, where the efforts of a claimant's attorney to obtain a recovery for the claimant also inures to the benefit of the subrogated insurance carrier that receives a portion of that recovery, the claimant's attorney receives a fee for the portion being paid to the subrogated carrier (as well as the remainder going to the claimant) so that the attorney is compensated the entire recovery his efforts have obtained without being penalized for the fact that part of it happens to go to the carrier.

In this case, rather than recovering any of the workers' compensation benefits it paid from the amount recovered by Robinson in settlement of the third-party UIM lawsuit, Sompo's obligation under the agreements to pay the workers' compensation lien, *i.e.* to itself, amounted to a relinquishment of its rights to subrogation and thus no recovery of any benefits it had paid to Robinson from the amount Robinson recovered in the third-party action. Because Robinson's recovery was not reduced to reimburse the subrogated insurance carrier, Criaco's fee on Robinson's recovery was never reduced so as to warrant any payment of a compensating fee under section 417.003. Criaco's position thus seeks to obtain a fee calculated as if there had been a third-party recovery for Robinson of $466,414 ($385,000 + $81,414) that was then reduced by a payment of $81,414 to Sompo as the subrogated workers' compensation carrier, which was not the case.

that amount plus $10,000 in attorney's fees.

Although the Rule 11 agreement and settlement agreement obligate Sompo to be responsible for payment of the outstanding workers' compensation lien, neither specifies a payee or any terms for such a payment. Nor do Criaco's pleadings or summary judgment motions demonstrate, or even allege, that Criaco was a party to, third-party beneficiary of, or assignee of either of the agreements such that it had standing to assert any claim for their alleged breach, and particularly for a breach of the obligation to pay the workers' compensation lien that was not held by Criaco, or otherwise payable to Criaco under the agreements.

Because Criaco was not a party, assignee, or third-party beneficiary of either of the agreements, any breach of those agreements was not a breach of a legal right belonging to him, and he was not a proper person to bring suit to enforce those agreements. Whether or not courts have labeled such a deficiency as a lack of standing, that is nevertheless what it is, and there is no other basis upon which a party can lack standing to assert a contract claim. Therefore, unless: (1) the concept of standing simply does not apply to a contract action; (2) standing is not a component of subject matter jurisdiction in a contract action; or (3) a lack of subject matter jurisdiction does not deprive a court of jurisdiction in a contract action, then Criaco's lack of standing for the claims he asserted deprived the trial court of subject matter jurisdiction to adjudicate those claims, and we can only vacate or reverse the judgment of the trial court and order those claims dismissed for want of jurisdiction.