ACCEPTED
13-15-00097-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
4/27/2015 11:50:43 AM
DORIAN RAMIREZ
CLERK

No. 13-15-00097-CV

IN THE COURT OF APPEALS
FOR THE
THIRTEENTH COURT OF APPEALS DISTRICT OF TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/27/2015 11:50:43 AM
DORIAN E. RAMIREZ
Clerk

TIMOTHY D. RAUB AND RAUB LAW FIRM, P.C.,

APPELLANTS,

— VERSUS—

GATE GUARD SERVICES, L.P., SIDNEY L. SMITH, AND
ASSOCIATION CASUALTY INSURANCE COMPANY,

APPELLEES.

## BRIEF OF APPELLANTS
## TIMOTHY D. RAUB AND RAUB LAW FIRM, P.C.

ABRAHAM MOSS
STATE BAR NO. 14581700
MOSS LAW OFFICE
5350 SOUTH STAPLES STREET
SUITE 209
CORPUS CHRISTI, TEXAS 78411
(361) 992-8999– PHONE
(361) 232-5007– FAX
AMOSS@AMLAWYERS.COM

BETH WATKINS
STATE BAR NO. 24037675
SHANNON K. DUNN
STATE BAR NO. 24074162
LAW OFFICE OF BETH WATKINS
926 CHULIE DRIVE
SAN ANTONIO, TEXAS 78216
(210) 225-6666– PHONE
(210) 225-2300– FAX
BETH.WATKINS@WATKINSAPPEALS.COM
SHANNON.DUNN@WATKINSAPPEALS.COM

ATTORNEYS FOR APPELLANTS
ORAL ARGUMENT CONDITIONALLY REQUESTED

# IDENTITIES OF PARTIES AND COUNSEL

**APPELLANTS**
Timothy D. Raub and Raub Law Firm, P.C.

> APPELLANT'S COUNSEL AT TRIAL AND ON APPEAL
> Abraham Moss
> State Bar No. 14581700
> MOSS LAW OFFICE
> 5350 South Staples Street, Suite 209
> Corpus Christi, Texas 78411
> (361) 992-8999– phone
> (361) 232-5007– fax
> amoss@amlawyers.com
>
> APPELLANT'S COUNSEL ON APPEAL
> Beth Watkins
> State Bar No. 24037675
> Shannon K. Dunn
> State Bar No. 24074162
> LAW OFFICE OF BETH WATKINS
> 926 Chulie Drive
> San Antonio, Texas 78216
> (210) 225-6666– phone
> (210) 225-2300– fax
> Beth.Watkins@WatkinsAppeals.com
> Shannon.Dunn@WatkinsAppeals.com

**APPELLEES**

Gate Guard Services, L.P., Sidney L. Smith, and Association Casualty Insurance Company

APPELLEES' COUNSEL AT TRIAL AND ON APPEAL
Greg C. Wilkins
State Bar No. 00797669
Monica L. Wilkins
State Bar No. 24043968
ORGAIN BELL & TUCKER, LLP
Post Office Box 1751
Beaumont, Texas 77704
(409) 838-6412– phone
(409) 838-6959– fax
gcw@obt.com
mwilkins@obt.com

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.     RAUB HAS STANDING TO SUE GATE GUARD BECAUSE HIS PLEADINGS
        DEMONSTRATED THAT HE SUFFERED A PARTICULARIZED INJURY AS A
        RESULT OF GATE GUARD'S CONDUCT TOWARD HIM . . . . . . . . . . . . . . . . . 8

        A.      The Trial Court Should Have Rejected Gate Guard's Standing
                Argument Because They Go To The Merits of Raub's Claims, Not
                To The Trial Court's Power to Hear Them Or Raub's Right To
                Assert Them . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                1.      A plaintiff's lack of true jurisdictional standing can deprive
                        a court of power to hear a case, but a lack of contractual
                        "standing" cannot . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                2.      Raub's pleadings demonstrated that he has standing to sue
                        Gate Guard for its wrongful conduct . . . . . . . . . . . . . . . . . . 10

3.      Gate Guard's plea to the jurisdiction did not deny that Raub had suffered a particularized injury, but instead complained only that Raub had sued the wrong party . . . . . . . . . . . . .  11

B.      *Berry* Does Not Apply To The Facts Of This Case . . . . . . . . . . . .  15

1.      *Berry* involved derivative claims and relied on a Supreme Court opinion that involved derivative claims. This case does not involve a derivative claim . . . . . . . . . . . . . . . . . .  15

2.      Because this case involves a "secret settlement," the outcome here is dictated by the Supreme Court's opinion in *Ginther*, not this Court's opinion in *Berry* . . . . . . . . . . . . .  19

3.      Despite Gate Guard's exclusive reliance on *Berry*, that case is so distinguishable from these facts as to make it essentially worthless for the resolution of this dispute . . . .  20

C.      Gate Guard's Standing Arguments Are Belied By Its Own Actions In This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

1.      If Gate Guard cannot be liable to Raub because Raub lacks standing to sue it, then the indemnity agreement between Gate Guard, Craft, and Henry is essentially meaningless . .  22

2.      By pointing out that Raub lacks contractual privity with it, Gate Guard implicitly recognized that Raub is not bound by the indemnity agreement . . . . . . . . . . . . . . . . . . . . . . . . . .  24

CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

APPENDIX    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

DOCUMENT                                                               TAB

January 30, 2015 Order granting Gate Guard's plea to the jurisdiction   . .   1

**CASES**                                                                    **PAGE**

*Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845 (Tex. 2005) . . . . . . .   7, 8, 10

*Berry v. Nueces County*, No. 13-05-00383-CV, 2006 WL 1280901 (Tex. App.–Corpus Christi May 11, 2006, pet. denied) (mem. op.)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 14, 15, 16, 17, 18, 19, 20, 21, 22

*Burris v. Metro. Transit Auth.*, 266 S.W.3d 16 (Tex. App.–Houston [1st Dist.] 2008, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18, 22

*City of Houston v. Morua*, 982 S.W.2d 126 (Tex. App.–Houston [1st Dist.] 1998, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*City of Houston v. Rhule*, 417 S.W.3d 440 (Tex. 2013) . . . . . . . . . . . . . . . . . .   7

*Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666 (Tex. App.–Houston [14th Dist.] 2006, pet. denied) . . . . . . . . . . . . . . . . . . . . . .   8

*Dairyland County Mut. Ins. Co. v. Estate of Basnight*, 557 S.W.2d 597 (Tex. Civ. App.–Waco 1977, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*Dow Chem. Co. v. Benton*, 357 S.W.2d 565 (Tex. 1962) . . . . . . . . . . .   16, 17, 18

*Galveston, H. & S. A. Ry. Co. v. Ginther*, 72 S.W. 166 (Tex. 1903) . . . . . .   19, 20

*Gen. Motors Acceptance Corp. v. Harris County Mun. Util. Dist. # 130*, 899 S.W.2d 821 (Tex. App.–Houston [14th Dist.] 1995, no writ) . . . . . . . . . .   8

*Honeycutt v. Billingsley*, 992 S.W.2d 570 (Tex. App.–Houston [1st Dist.] 1999, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 15, 18

*Hudson v. Hinton*, 435 S.W.2d 211 (Tex. Civ. App.–Dallas 1968, no writ) . .   24

*Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203 (Tex. 1999)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 25

*Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659 (Tex.
1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701 (Tex. App.–Houston [1st
Dist.] 2009, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) . . . . . . . . . . . . . . . . . . . . 9

*Rogers v. Duke*, 766 S.W.2d 547 (Tex. App.–Houston [1st Dist.] 1989, no writ)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22

*Sammons & Berry, P.C. v. Nat'l Indemnity Co.*, No. 14-13-00070-CV, 2014
WL 3400713 (Tex. App.–Houston [14th Dist.] July 10, 2014, no pet.)
(mem. op.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

*Terrell v. Pampa Indep. Sch. Dist.*, 345 S.W.3d 641 (Tex. App.–Amarillo 2011,
pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440 (Tex. 1993) . . . . 7, 8

*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004) . . . . . 7

*Williams v. Huff*, 52 S.W.3d 171 (Tex. 2001) . . . . . . . . . . . . . . . . 8, 9, 11, 15, 18

*Yasuda Fire & Marine Ins. Co. of Am. v. Criaco*, 225 S.W.3d 894 (Tex.
App.–Houston [14th Dist.] 2007, no pet.) . . . . . . . . . . . . . . . . . . . 9, 12, 14

STATUTES AND RULES

Tex. Gov't Code Ann. § 25.1802 (Lexis 2013) . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Tex. R. Civ. P. 306a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## **CONSTITUTION**

Tex. Const. art. V, § 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATEMENT OF THE CASE

This is an appeal of a dismissal after a plea to the jurisdiction arguing the plaintiffs lacked standing to assert their claims. CR 143.[1] Appellants Timothy D. Raub and Raub Law Firm, P.C. (collectively, "Raub") sued Appellees Gate Guard Services, L.P., Sidney L. Smith, and Association Casualty Insurance Company (collectively, "Gate Guard") on claims of tortious interference with existing contract, conspiracy, fraud, and promissory estoppel. CR 5-11. Raub's tort claims against Gate Guard arise out of a secret settlement Gate Guard negotiated with Raub's former client, Tonya Craft, in a different lawsuit. *See id.* Gate Guard and Craft settled their claims and obtained a judgment without notice to Raub, even though Raub timely intervened in the lawsuit and Gate Guard expressly recognized the existence of Raub's interest in the lawsuit before it settled with Craft. CR 6-7; CR 139-42; CR 56.

Despite pleadings alleging that Raub had suffered a particularized injury, on January 30, 2015, the County Court at Law Number 1 of Nueces County, Texas, the Honorable Martha Huerta, presiding, dismissed Raub's lawsuit on standing grounds. CR 143. Raub timely filed his Notice of Appeal on February 25, 2015. CR 147-49.

---

[1]Raub will cite the Clerk's Record as "CR [page number]." Raub will cite the four-volume Reporter's Record as "[volume number] RR [page/exhibit number]."

## STATEMENT REGARDING ORAL ARGUMENT

This is a relatively simple appeal of the trial court's erroneous conclusion that Raub lacked standing to seek judicial relief on his claims that Gate Guard committed numerous torts against him and that he suffered damages as a result. There are no complicated questions of law or fact at issue here. For this reason, Raub does not believe oral argument will be helpful to the Court. If, however, the Court decides to grant oral argument in this case, Raub will attend and present argument.

## ISSUE PRESENTED

Despite Gate Guard's insistence in the trial court that Raub's claims against it were "derivative" of Craft's claims against it, Raub did not allege that Gate Guard's liability to him arose out of either his contract with Craft or Gate Guard's tortious conduct toward Craft. Instead, Raub alleged that Gate Guard was liable to him for damages he suffered as a result of Gate Guard's own wrongdoing directly against him. Furthermore, even if Gate Guard were correct that Raub sued the "wrong" party, that allegation goes to the merits of Raub's lawsuit, not to the court's power to hear it. **Did Raub have standing to sue Gate Guard to recover for the damages that its own wrongdoing caused him to suffer?**

## STATEMENT OF FACTS

In April of 2011, Appellee Sidney L. Smith was driving through Corpus Christi in the course and scope of his employment with Appellee Gate Guard Services, L.P. when he suddenly and unexpectedly veered into a vehicle driven by Kristilyn Carlock. 3 RR 9; CR 6; 4 RR Exh. 1-2. Craft was a passenger in Carlock's vehicle, and both she and Carlock suffered injuries in the accident. 3 RR 9; CR 6. Shortly after the accident, both Carlock and Craft hired Raub to represent them in their lawsuit against Gate Guard. 3 RR 9; CR 140; CR 6; 4 RR Exh. 1. Craft's contract with Raub assigned him a contingent interest in any money Craft recovered from Gate Guard, a contractual and equitable lien on those funds, and reimbursement for reasonable expenses Raub incurred or paid on Craft's behalf. CR 6-7.

In July of 2011, Craft terminated her contract with Raub without cause and hired the Law Office of Thomas J. Henry ("Henry") instead. CR 7. Carlock, however, opted to retain Raub as her lawyer. CR 140; 3 RR 9. Henry filed a lawsuit against Gate Guard on Craft's behalf on October 17, 2011. CR 7; 3 RR 9. Carlock, through Raub, intervened in that lawsuit. 3 RR 9. With Raub's assistance, Carlock eventually settled and dismissed her claims against Gate Guard. *See id.*; *see also* 4 RR Exh. 2.

But Carlock was not the only intervenor in Craft's lawsuit. On February 27, 2013, Raub intervened on his own behalf to assert his interest in that lawsuit: his

contractually assigned attorneys' fees and reimbursement of the expenses he had incurred in Craft's case before she unjustifiably fired him. CR 139-42. Raub's intervention explicitly asserted an interest in and a lien on "any money derived as a result of settlement or final judgment obtained in this case and cause." CR 140. Raub served notice of his intervention on both Gate Guard and Craft. CR 142. Raub also sent Gate Guard's attorneys a letter and a proposed Rule 11 agreement regarding his claim to a portion of any settlement or final judgment in Craft's lawsuit. CR 56.

On May 17, 2013, Gate Guard sent Raub a letter acknowledging his interest in Craft's recovery in the underlying lawsuit. CR 56. In that letter, Gate Guard agreed that Craft's lawsuit could not be resolved without addressing the claims Raub asserted through his intervention:

Dear Tim:

I am in receipt of your May 14, 2013 letter and proposed Rule 11 agreement. I cannot sign the letter agreement as drafted, as I cannot condition my clients' ability to negotiate a settlement of Ms. Craft's claim on the extent to which Ms. Craft and Mr. Henry agree that you must be named as a payee on any settlement check(s). As we have previously discussed, however, I understand you claim an interest in any recovery Ms. Craft may obtain in this case, whether by settlement or judgment, and I agree that your claimed interest must be addressed in connection with any settlement agreement reached with Ms. Craft and Mr. Henry—whether by including you as a payee on the settlement check(s), confirming a written agreement between you and Mr. Henry as to the resolution of your claimed interest, or the like. As I am sure you can understand, it is imperative that my clients obtain closure as to all claims and potential claims arising as a result of the incident made the basis of the lawsuit above referenced if a settlement agreement is reached with Ms. Craft. We are aware that you claim an interest in Ms. Craft's recovery, if any, and we agree that your claimed interest must be addressed and resolved in connection with any settlement agreement reached with respect to the compromise of Ms. Craft's claim. I am hopeful this addresses any questions or concerns you have regarding this matter.

Sincerely,

ORGAIN BELL & TUCKER, LLP

Greg C. Wilkins

GCW/sb

CR 56. In August of 2013—just three months after Gate Guard expressly acknowledged and recognized Raub's interest in Craft's lawsuit—Gate Guard and Craft agreed to mediate Craft's claims. CR 7; 3 RR 19-20; 4 RR Exh. 1. Neither Gate Guard nor Craft notified Raub of their mediation even though (a) he was an intervenor in the case and (b) Gate Guard had acknowledged the existence of his interest in writing. Raub did not participate in the mediation because he had no way of knowing that it was taking place. *See id.*

The mediation ended in a settlement between Gate Guard and Craft, and Craft agreed to accept $350,000 in exchange for the release of her claims. CR 59. As part of its agreement to pay the $350,000, Gate Guard asked Craft to indemnify it against any future lawsuits brought by Raub. CR 60. By doing so, Gate Guard confirmed both its knowledge that Raub had an interest in the case and its recognition that Raub might someday file a lawsuit against it. *See id.*

On September 3, 2013, the County Court at Law Number 2 of Nueces County signed an Agreed Take Nothing Final Judgment memorializing the settlement and dismissing Craft's lawsuit. CR 65. Neither Gate Guard nor Craft—both of whom were indisputably aware of Raub's asserted interest in the outcome of the case—bothered to notify Raub of the mediation, the settlement, or the final judgment. 3 RR 20. Raub also did not receive notice of the judgment from the court, even though the judgment purported to deny "[a]ll relief not expressly granted herein"—*i.e.*, the relief requested in Raub's petition in intervention. CR 65; 3 RR 20; *see also* Tex. R. Civ. P. 306a (Raub was entitled to notice of the judgment). Raub did not learn of the settlement and final judgment until November of 2013, when he happened to find a notation of the judgment on the Nueces County District Clerk's website. CR 7; 3 RR 20-21.

After he learned that Gate Guard and Craft had deliberately excluded him from the settlement negotiations and the resulting judgment, Raub sued Gate Guard for

tortious interference with existing contract, conspiracy, fraud, and promissory estoppel. CR 9-10. Because the amount of his damages—albeit not the factual cause of the damages themselves—was tied to the terms of his contract with Craft, he also sought a declaratory judgment on the validity of his contract with Craft and a declaration of his rights under that contract. CR 8. Importantly, Raub did not allege that Gate Guard had breached that contract or that its liability to him arose under it; instead, Raub specifically requested both compensatory and exemplary damages arising out of Gate Guard's own tortious conduct toward him. CR 10.

In response to Raub's lawsuit, Gate Guard filed a plea to the jurisdiction alleging Raub lacked standing to sue it. CR 21-22. It based this assertion on its belief that "the claims Raub has asserted against [Gate Guard] are wholly derivative of the claims of Craft, and Raub's rights, claims, and causes of action, are against Craft, not [Gate Guard]." CR 21. It urged the trial court to find that this Court's opinion in *Berry v. Nueces County*[2] mandated the dismissal of Raub's lawsuit. *See id.* After a hearing, the trial court granted Gate Guard's plea to the jurisdiction and dismissed Raub's lawsuit against Gate Guard for lack of subject matter jurisdiction. CR 143. This appeal followed. CR 147.

---

[2]No. 13-05-00383-CV, 2006 WL 1280901 (Tex. App.–Corpus Christi May 11, 2006, pet. denied) (mem. op.).

## SUMMARY OF THE ARGUMENT

Gate Guard's position in the trial court was that Raub lacked standing to sue it for the attorneys' fees he was owed under his contract with Craft because Raub's claims are allegedly "derivative" of those raised by Craft in her own lawsuit. But this argument—which the trial court erroneously accepted—distorts the true nature of Raub's lawsuit against Gate Guard. While the monetary value of Raub's damages can be determined by referring to his contract with Craft, the actual fact of the damages themselves arose out of Gate Guard's own tortious actions toward Raub, not out of Gate Guard's tortious actions toward Craft. Nevertheless, even though Raub's lawsuit plainly complains of Gate Guard's own wrongdoing, Gate Guard used the fact that those torts deprived Raub of his attorneys' fees in the Craft lawsuit as a smokescreen to confuse the trial court into believing Raub sued the "wrong" defendant. This Court should look beyond Gate Guard's shell game and recognize that its claim that Raub lacks standing to sue it for its own wrongdoing—wrongdoing that injured Raub—is patently absurd.

## ARGUMENT AND AUTHORITIES

### I. STANDARD OF REVIEW

The trial court dismissed Raub's lawsuit for lack of subject matter jurisdiction on the basis that Raub lacked standing to sue Gate Guard. CR 143; CR 21-22. The question of whether the trial court had subject matter jurisdiction over Raub's lawsuit—including the question of Raub's standing to sue—is a legal issue this Court reviews *de novo*. *See, e.g.*, *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013).

The plaintiff bears the burden "to allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). To demonstrate standing, a plaintiff must allege "(1) a real controversy between the parties, that (2) will be actually determined by the judicial declaration sought." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). In reviewing the trial court's decision to grant Gate Guard's plea to the jurisdiction, this Court must construe the jurisdictional allegations in Raub's pleadings liberally and in Raub's favor. *See, e.g.*, *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *City of Houston v. Morua*, 982 S.W.2d 126, 127 (Tex. App.–Houston [1st Dist.] 1998, no pet.).

**II.** **RAUB HAS STANDING TO SUE GATE GUARD BECAUSE HIS PLEADINGS DEMONSTRATED THAT HE SUFFERED A PARTICULARIZED INJURY AS A RESULT OF GATE GUARD'S CONDUCT TOWARD HIM.**

    **A.** **The Trial Court Should Have Rejected Gate Guard's Standing Arguments Because They Go To The Merits of Raub's Claims, Not To The Trial Court's Power to Hear Them Or Raub's Right To Assert Them.**

        1.    A plaintiff's lack of true jurisdictional standing can deprive a court of power to hear a case, but a lack of contractual "standing" cannot.

"The doctrine of standing identifies suits appropriate for judicial determination." *Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 670 (Tex. App.–Houston [14th Dist.] 2006, pet. denied). When a defendant like Gate Guard files a plea to the jurisdiction asserting the plaintiff lacks standing, that defendant is really arguing that the court lacks the power to hear the plaintiff's claims. *See, e.g.*, *Gen. Motors Acceptance Corp. v. Harris County Mun. Util. Dist. # 130*, 899 S.W.2d 821, 824 n.3 (Tex. App.–Houston [14th Dist.] 1995, no writ). This is because jurisdictional standing is a prerequisite to maintaining a lawsuit in either state or federal court. *Williams v. Huff*, 52 S.W.3d 171, 178 (Tex. 2001). The test for standing in Texas asks whether a real controversy exists between the parties and whether that controversy can be resolved by the judicial declaration sought. *See Austin Nursing Ctr.*, 171 S.W.3d at 840; *Tex. Ass'n of Bus.*, 852 S.W.2d at 443-44. This test is

satisfied if the plaintiff can "demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that **the defendant's actions** have caused the plaintiff some particular injury." *Williams*, 52 S.W.3d at 178 (emphasis added).

Occasionally, however, courts and litigants also use the word "standing" as shorthand to describe whether a person has a right to recover under a contract. *See, e.g.*, *Yasuda Fire & Marine Ins. Co. of Am. v. Criaco*, 225 S.W.3d 894, 898 (Tex. App.–Houston [14th Dist.] 2007, no pet.). But unlike true jurisdictional standing, a lack of "standing" to sue under a contract will not deprive the trial court of power to hear the case—instead, contractual "standing" simply goes to the merits of the plaintiff's claim. *See id.* A court cannot properly dismiss a claim for lack of subject matter jurisdiction on the basis that the plaintiff lacks "standing" to sue under a contract. *See id.*; *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160-61 (2010) ("'Jurisdiction' refers to a court's adjudicatory authority. Accordingly, the term 'jurisdictional' properly applies only to prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) implicating that authority.") (internal quotation marks and citations omitted).

2. **Raub's pleadings demonstrated that he has standing to sue Gate Guard for its wrongful conduct.**

"A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority." *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). Raub's pleadings alleged that he suffered a particularized injury—*i.e.*, an injury that was personal to him—as a result of Gate Guard's decision to (a) tortiously interfere with Raub's existing contract with Craft; (b) conspire with Craft and Henry to accomplish an unlawful purpose; (c) make material and false representations directly to Raub, upon which Raub then justifiably relied; and (d) promise Raub that his interest in the Craft lawsuit would be addressed in any settlement agreement or final judgment. CR 9-10. He also contended that this injury would be remedied by "the judicial declaration sought": compensatory and exemplary damages. CR 10.

In other words, Raub's pleadings alleged that a real controversy existed between him and Gate Guard and that he suffered personal harm as a result; that the controversy resulted from Gate Guard's own actions; and the court had the power to resolve that dispute. *See* CR 9-10; *Austin Nursing Ctr.*, 171 S.W.3d at 840; *Nootsie, Ltd.*, 925 S.W.2d at 661; *see also* Tex. Const. art. V, § 8 (Texas district courts are courts of general jurisdiction); Tex. Gov't Code Ann. § 25.1802(a)(1) (Lexis 2013)

(the county courts at law of Nueces County have "the jurisdiction provided by the constitution and by general law for district courts").

These allegations—which the standard of review requires this Court to accept as true—were sufficient to demonstrate that Raub "possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Williams*, 52 S.W.3d at 178. Accordingly, these allegations demonstrated Raub's standing to sue Gate Guard, and this Court should reverse the trial court's order granting Gate Guard's plea to the jurisdiction. *See id.*

3. Gate Guard's plea to the jurisdiction did not deny that Raub had suffered a particularized injury, but instead complained only that Raub had sued the wrong party.

According to Gate Guard, the terms of its settlement agreement with Craft—which included a promise from Craft that she would indemnify Gate Guard against any claims Raub might assert against it in the future—mandated dismissal of Raub's lawsuit against it. 3 RR 13. Gate Guard based this assertion on its contention that "as the litigants entitled to a release, [it was] justifiably entitled to rely upon the fact that [Craft's promise to indemnify Gate Guard against Raub's claims] had been, in fact, satisfied." *Id.* Gate Guard also contended that Raub's claims against it were "derivative" of Craft's claims against it because—at least according to Gate Guard—those claims arose solely out of Raub's contract with Craft. 2 CR 21-22. In

other words, Gate Guard contended that the terms of both its contract with Craft—a contract to which Raub was not a party because Gate Guard and Craft made sure he would not be—and Raub's contract with Craft meant that Raub only had "standing" to sue Craft, not Gate Guard. *See id.*; *see also* 3 RR 14 ("I don't have the wherewithal, Your Honor, to understand why it is that Mr. Raub has chosen to sue parties with whom he has no contractual privity[.]").[3] But by asserting that Raub sued the "wrong" party, Gate Guard incorrectly conflated jurisdictional standing—which goes to the court's power to hear Raub's claims—with contractual "standing," which may affect Raub's right to recover on his claims but cannot deprive the court of power to decide those claims. *See Yasuda Fire*, 225 S.W.3d at 898.

The Fourteenth Court of Appeals in Houston recently rejected an argument almost identical to Gate Guard's in another case regarding a law firm's right to collect its fees. *See Sammons & Berry, P.C. v. Nat'l Indemnity Co.*, No. 14-13-00070-CV, 2014 WL 3400713, at \*3 (Tex. App.–Houston [14th Dist.] July 10, 2014, no pet.) (mem. op.). In *Sammons*, a law firm sued an insurance company to recover attorneys'

---

[3]Gate Guard's complaint that it lacks "contractual privity" with Raub is unavailing, because Raub sued Gate Guard on tort theories of liability, not for breach of contract. CR 9-10. Furthermore, Gate Guard's "contractual privity" argument is wholly at odds with its insistence that Raub's right to recover against it is somehow foreclosed by the terms of Craft's promise to indemnify Gate Guard against Raub's claims. *See* 3 RR 14 ("The release that both [Craft] and [Henry], as her counsel, executed addressed by name their responsibility to address Mr. Raub's claimed interest; and quite frankly, in executing and returning that, my clients, as the litigants entitled to a release, were justifiably entitled to rely upon the fact that that condition had been, in fact, satisfied.").

fees it was owed in connection with a former client's lawsuit. *See id.* at *1. The

insurance company defendant argued, *inter alia*, that the law firm lacked standing to

sue it, and the trial court agreed. *See id.*

The Fourteenth Court rejected this conclusion and held that the law firm did

have standing to sue the insurance company.[4] *See id.* It noted that the *Sammons*

defendant did not "base its challenge to jurisdiction on a lack of a real controversy

regarding [the law firm's] entitlement to attorneys' fees, but instead contends [the law

firm] has sued the wrong party." *See id*. at *3. The court then concluded:

> We need not decide whether [the defendant] is correct that [the law firm]
> may maintain suit solely against its former client **because this
> contention relates to [the law firm's] entitlement to the remedy
> sought, not the court's adjudicatory authority**. Because [the
> defendant's] contention does not deprive the trial court of subject-matter
> jurisdiction, we conclude it does not support dismissal.

*Id.* at *3 (emphasis added). This conclusion is consistent with a similar holding from

the First Court of Appeals in Houston, which has concluded that in a case like this

one, an attorney in Raub's position may recover from a defendant tortfeasor as a

matter of law if the evidence shows the tortfeasor "had actual knowledge of [the

original attorney's] interest, but chose to disregard it and make payment only to the

---

[4]Although the Houston Court of Appeals held the law firm had standing to sue the insurance company, it refused to reinstate the law firm's suit because it held that the trial court properly dismissed the case on the basis of *forum non conveniens*. *Sammons*, 2014 WL 3400713 at *1. Unlike in *Sammons*, however, there are no *forum non conveniens* problems at issue in this lawsuit.

-13-

[plaintiff] and [the plaintiff's new lawyer]." *Honeycutt v. Billingsley*, 992 S.W.2d 570, 585 (Tex. App.–Houston [1st Dist.] 1999, pet. denied).[5]

Here, as in *Sammons*, the only argument Gate Guard asserted to support its standing argument was its contention that Raub sued the "wrong" party. *Compare* CR 21-22, *with Sammons*, 2014 WL 3400713 at *3. This allegation is absurd on its face, because Raub sued Gate Guard for **its own** wrongful actions. CR 9-10. But even if Gate Guard's allegation were correct, it was not sufficient to deprive the trial court of subject matter jurisdiction on the basis of standing because that argument goes to the merits of Raub's claims, not to his right to request relief for those claims or the court's power to hear them. *Yasuda Fire*, 225 S.W.3d at 898; *Honeycutt*, 992 S.W.2d at 585; *Sammons*, 2014 Tex. App. LEXIS 7470 at *8-9. Furthermore, Gate Guard itself recognized that a lack of capacity to sue or be sued is an affirmative defense to suit, not a jurisdictional bar to the court's power to hear a claim. CR 22-25 (the affirmative defenses in Gate Guard's original answer to Raub's lawsuit, denying, *inter alia*, both Raub's capacity to sue Gate Guard and Gate Guard's liability in the capacity in which Raub sued it). Finally, Gate Guard did not even attempt to dispute that Raub

---

[5]In *Berry*, this Court distinguished *Honeycutt* on the basis that "all parties involved [in *Honeycutt*], including the defendant, were apparently on notice of the referral and contingent fee agreement." *Berry*, 2006 WL 1280901 at *3 (citing *Honeycutt*, 992 S.W.2d at 574-75). Here, the evidence shows that Gate Guard was indisputably on notice of Raub's contingent fee agreement with Craft well before it cut a settlement check to Craft and Henry. CR 56; CR 60.

"possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Compare Williams*, 52 S.W.3d at 178, *and Honeycutt*, 992 S.W.2d at 585, *with* CR 21-22. As a result, Gate Guard failed to show that Raub lacked standing to sue it, and the trial court should have denied Gate Guard's plea to the jurisdiction. *See id.*

### B. *Berry* Does Not Apply To The Facts Of This Case.

1. *Berry* involved derivative claims and relied on a Supreme Court opinion that involved derivative claims. This case does not involve a derivative claim.

In the trial court, Gate Guard argued that this Court's opinion in *Berry v. Nueces County* mandated dismissal of Raub's claims against it. CR 21-22; 3 RR 11. In *Berry*, an attorney filed a petition in intervention after a settlement agreement between his former client and the defendant. *Berry*, 2006 WL 1280901 at *1. The attorney argued that his client and the defendant were jointly and severally liable for attorneys' fees he was entitled to under his contract with the client, but he did not assert any independent tort claims against the defendant. *See id.* The defendant filed a plea to the jurisdiction "alleging various defenses that would defeat the trial court's jurisdiction," including claims of governmental immunity. *See id.* The defendant did not, however, question the attorney's standing to being suit against it. *See id.* The trial

-15-

court granted the defendant's plea to the jurisdiction, and the attorney appealed to this Court. *See id.*

A divided panel of this Court vacated the trial court's order granting the defendant's plea to the jurisdiction. *Id.* at *4. However, the Court did not reinstate the attorney's lawsuit; instead, it dismissed his claims on the basis that he lacked standing to assert those claims against the defendant. *Id.* The Court concluded that the attorney in *Berry* lacked standing to sue the defendant tortfeasor because "the attorney-client relationship is one of contract, and the attorney's rights are wholly derivative from those of his client. Thus, once dismissed by his client, the attorney may sue that client, but no longer has a cause of action to assert against the opposing party[.]" *Berry*,2006 WL 1280901 at *2 (internal citation omitted).

In reaching this conclusion, the Court relied heavily on the Texas Supreme Court's opinion in *Dow Chemical Co. v. Benton*. *See id.* at *2-3 (citing *Dow Chem. Co. v. Benton*, 357 S.W.2d 565 (Tex. 1962)). In *Dow*, the defendant moved to dismiss a plaintiff's lawsuit against it as a sanction because the plaintiff failed to appear for his deposition. *Dow*, 357 S.W.2d at 566. The plaintiff's attorneys then filed a petition in intervention seeking to prosecute the plaintiff's claims so they could recover their contingent fee interest. *See id.* The Supreme Court held that the attorneys lacked standing to do so because "we have never held that the [client's] cause of action is

divisible and may be tried for only a percentage of the cause of action"—*i.e.*, the attorneys' fees alone. *Dow*, 357 S.W.2d at 567.

This Court's conclusion in *Berry* and the Supreme Court's conclusion in *Dow* made perfect sense within the context of those cases, because those lawyers' claims arose **solely** out of their clients' contractual duties to them, not any independent wrongdoing the defendants had committed against the attorneys. *See Dow*, 357 S.W.2d at 566; *Berry*, 2006 WL 1280901 at \*1. Both the *Berry* attorneys and the *Dow* attorneys simply sought to collect their contingent fees from the defendants—either jointly and severally with the client, as in *Berry*, or in lieu of the client, as in *Dow*— even though they did not assert that the defendants had independently harmed them rather than the clients. *See id.* In fact, the attorneys in *Dow* specifically sought permission "to prosecute **the same claim** [as their former client] to secure their contingent fee" even after the client's lawsuit had been dismissed. *Dow*, 357 S.W.3d at 566 (emphasis added). In other words, the claims raised by the attorneys in *Dow* and *Berry* were completely dependent on the defendants' tort liability **to the clients**, not any independent tort liability to the attorneys themselves. *See Dow*, 357 S.W.3d at 566; *Berry*, 2006 WL 1280901 at \*1.

The opposite is true here. Unlike the attorneys in *Berry* and *Dow*, Raub has asserted independent tort claims against Gate Guard that complain of Gate Guard's

-17-

actions toward Raub, not its actions toward Craft. CR 9-10. Raub alleged that Gate Guard committed tortious acts directly against Raub that caused him to suffer an individualized injury. CR 9-10. Specifically, he alleged that Gate Guard knew he had an interest in the outcome of Craft's lawsuit and explicitly promised him that his interest would be "addressed" in any settlement or judgment it reached with Craft, but nevertheless deliberately disregarded his interests during the settlement with Craft. CR 9-10; CR 56; *see also Honeycutt*, 992 S.W.2d at 584-85. These claims cannot be "derivative" of Craft's claims against Gate Guard because they have nothing to do with Craft or her claims against Gate Guard. CR 9-10.

Raub's claim against Gate Guard—that Raub suffered an injury because of Gate Guard's actions toward him—is all that is required to trigger the trial court's power to hear the lawsuit that arose out of those acts. *See, e.g.*, *Williams*, 52 S.W.3d at 178. Because this fact was not present in either *Berry* or *Dow*, those cases are distinguishable from this one and cannot control the outcome here. *See, e.g.*, *Terrell v. Pampa Indep. Sch. Dist.*, 345 S.W.3d 641, 644 (Tex. App.–Amarillo 2011, pet. denied); *Burris v. Metro. Transit Auth.*, 266 S.W.3d 16, 22 (Tex. App.–Houston [1st Dist.] 2008, no pet.); *Rogers v. Duke*, 766 S.W.2d 547, 549 (Tex. App.–Houston [1st Dist.] 1989, no writ).

2. Because this case involves a "secret settlement," the outcome here is dictated by the Supreme Court's opinion in *Ginther*, not this Court's opinion in *Berry*.

Despite what Gate Guard urged the trial court to believe, the fact that the **amount** of Raub's damages—but not the fact of Gate Guard's liability for that amount—can be traced to his contract with Craft does not negate that Raub would not have suffered those damages in the first place if Gate Guard had not committed the acts alleged in Raub's lawsuit. *Compare* CR 9-10 *with Berry*, 2006 WL 1280901 at *1. In fact, the Texas Supreme Court has held that a defendant like Gate Guard—one who knows of the attorney's contingent fee interest and nevertheless decides to settle with and pay the client behind the attorney's back—puts itself in the position "of any other person paying a debt to the original creditor instead of an assignee whose rights were known." *Galveston, H. & S. A. Ry. Co. v. Ginther*, 72 S.W. 166, 167 (Tex. 1903). This Court actually took note of the *Ginther* opinion in *Berry*, and distinguished that case by recognizing that *Berry* "[did] not present a case in which the parties themselves arrange a secret settlement in order to defraud their own attorneys." *Berry*, 2006 WL 1280901 at *3 (citing *Ginther*, 72 S.W. at 167).

*Berry* may not have presented a case of a "secret settlement," but this case does. CR 9-10. For this reason, as the Court itself recognized in *Berry*, this case must be decided under the Supreme Court's ruling in *Ginther*. *See Ginther*, 72 S.W. at 167;

-19-

*Berry*, 2006 WL 1280901. And *Ginther* holds that because Gate Guard was aware of Raub's interest in the outcome of Craft's lawsuit, Raub's rights against Gate Guard "could not be defeated by payment to [Craft]." *Ginther*, 72 S.W. at 167.

3.      Despite Gate Guard's exclusive reliance on *Berry*, that case is so distinguishable from these facts as to make it essentially worthless for the resolution of this dispute.

*Berry* was the only authority Gate Guard presented in support of its assertion that Raub lacked standing to sue it. CR 21; 3 RR 11, 12, 17. But despite Gate Guard's exclusive reliance on *Berry*, it is easily distinguishable from the facts at issue here:

| *Berry v. Nueces County* | *Raub v. Gate Guard* |
|---|---|
| After an attorney's former client fired him, he intervened in her lawsuit to protect his claim for attorney's fees (2006 WL 1280901 at *1). | After Raub's former client, Craft, fired him, he intervened in her lawsuit to protect his claim for attorney's fees (CR 139-42). |
| With the help of her new attorney, the client amicably settled with the defendant (2006 WL 1280901 at *1). | With the help of her new attorney, Craft amicably settled with the tortfeasor, Gate Guard (CR 58-62). |
| The defendant "did not have knowledge that [the attorney] might assert a claim against it instead of [the client]" (2006 WL 1280901 at *3). | Gate Guard sent Raub written acknowledgment that Raub's "claimed interest must be addressed in connection with any settlement agreement reached with Ms. Craft and [Henry]." (CR 56). |

-20-

| | |
|---|---|
| The defendant's settlement agreement with the client provided that the client "had not 'assigned, authorized, or transferred . . . any claims . . . of any kind or character, which Plaintiff has or may have had against one or more Defendants, except to the extent of any agreement between Plaintiff and her current attorney(s)." (2006 WL 1280901 at *1 n.2). | Gate Guard's settlement agreement with Craft explicitly required Craft to indemnify Gate Guard against "any lien applicable to or attorneys' fee interest in the settlement amount reference herein held or claimed by Timothy D. Raub or the Raub Law Firm, P.C." (CR 60). |
| The client's new attorney informed er former attorney about the settlement with the defendant (2006 WL 1280901 at *1). | Neither Gate Guard nor Craft informed Raub about the settlement (CR 7; *see also* 3 RR 9 (Gate Guard's attorney's recognition in the trial court that "[Craft's] claim was settled. There is a number of allegations regarding the timing and who told what to whom, some of which, quite frankly, I don't disagree with[.]"). |
| After being informed about the settlement, the attorney filed a second petition in intervention arguing that the client and the defendant were jointly and severally liable for the attorney's claimed attorneys' fees out of the settlement (2006 WL 1280901 at *1). | Raub did not file a second intervention, because he did not know about the settlement until two months after the trial court entered a judgment dismissing Craft's lawsuit (CR 7; 3 RR 20-21). |
| The defendant filed its plea to the jurisdiction in response to the attorney's second petition in intervention, which merely repeated his contractual right to attorney's fees and did not assert any independent claims against the defendant (2006 WL 1280901 at *1). | Gate Guard filed a plea to the jurisdiction arguing that Raub did not have standing to seek relief on his claims based on Gate Guard's own wholly independent wrongdoing against Raub (*Compare* CR 8-10 *with* CR 21-22). |

| This Court noted that the attorney's claims against the defendant "[did] not present a case in which the parties themselves arrange a secret settlement in order to defraud their own attorneys." (2006 WL 1280901 at *3). | Raub explicitly alleged that "Craft, Gate Guard and Smith entered into a secretive release and settlement agreement pertaining to all claims alleged by Craft in the Lawsuit" and that "[t]he mediation, settlement of the Lawsuit, the submission of the final judgment and the entry by the court . . . were deliberately concealed from Raub by Craft, Gate Guard and Smith by and through their attorneys[.]" (CR 7-8). |
|---|---|

A prior case that is factually distinguishable from the present case is not controlling authority that mandates a certain result. *See, e.g.*, *Terrell*, 345 S.W.3d at 644; *Burris*, 266 S.W.3d at 22; *Rogers*, 766 S.W.2d at 549. The factual situation presented in *Berry* is simply too different from these facts to offer any help to the Court in resolving this dispute. As a result, this Court's opinion in *Berry* does not mandate the dismissal of Raub's lawsuit. *Cf. Burris*, 266 S.W.3d at 22.

### C. Gate Guard's Standing Arguments Are Belied By Its Own Actions In This Case.

1. If Gate Guard cannot be liable to Raub because Raub lacks standing to sue it, then the indemnity agreement between Gate Guard, Craft, and Henry is essentially meaningless.

Gate Guard's settlement agreement with Craft includes an indemnity clause that specifically references Raub's claims. CR 60. That indemnity clause requires Craft and Henry to "indemnify, defend and hold and save harmless (at my sole cost and expense, including attorneys' fees) [Gate Guard] from . . . any lien applicable to or

attorneys' fee interest in the settlement amount . . . held or claimed by [Raub]." *Id.* The broad language of this clause "evidences an agreement to indemnify [Gate Guard] against liability" to Raub. *See Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999). The clause therefore entitles Gate Guard to recover from Craft and Henry "when the liability becomes fixed and certain, as by rendition of a judgment." *Id.* In other words, this clause ensured that if Raub sued Gate Guard and won, Craft and Henry would then be liable to Gate Guard for any judgment Gate Guard was ordered to pay Raub. *Compare id. with* CR 60.

Gate Guard recognized the existence and purpose of this clause when it filed a third-party petition against Craft and Henry in Raub's lawsuit. CR 25-27. Gate Guard did not, however, offer the trial court any reason why it would have done so if the indemnity clause would never be triggered—*i.e.*, if Raub had no right to sue Gate Guard at all, and Craft and Henry's liability under the indemnity clause could therefore never "become[] fixed and certain." *See Ingersoll-Rand Co.*, 997 S.W.2d at 207 (a broad indemnity clause like this one is not triggered until "the liability becomes fixed and certain").

Nor did Gate Guard offer the trial court any authority to support its assertion that the existence of the indemnity clause somehow deprived Raub of standing to sue Gate Guard. *See, e.g.*, CR 13 ("The release that both [Craft] and [Henry], as her

counsel, executed addressed by name their responsibility to address Mr. Raub's claimed interest[.]"). This is because no such authority exists. An indemnity clause like this one cannot deprive a court of standing; all it does is establish Gate Guard's right to recover from Craft and Henry if Gate Guard is eventually found liable to Raub. CR 60; *cf. Ingersoll-Rand Co.*, 997 S.W.2d at 207. Because Gate Guard obviously cannot be found liable to Raub if Raub has no standing to sue Gate Guard in the first place, Gate Guard's arguments in the trial court essentially contend that its own indemnity clause is meaningless. 3 RR 13; *Ingersoll-Rand Co.*, 997 S.W.2d at 207.

> 2. By pointing out that Raub lacks contractual privity with it, Gate Guard implicitly recognized that Raub is not bound by the indemnity agreement.

An indemnity clause, by its very nature, is an agreement between parties to a contract. *See, e.g.*, *Hudson v. Hinton*, 435 S.W.2d 211, 214 (Tex. Civ. App.–Dallas 1968, no writ) (indemnity clauses are "construed by the application of ordinary rules of [contract] construction"). If Gate Guard wanted Raub to be bound by any of the contractual terms in the settlement agreement, it needed to make sure Raub was a party to that agreement. *See, e.g.*, *Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701, 706 (Tex. App.–Houston [1st Dist.] 2009, no pet.) ("It goes without saying that a contract cannot bind a nonparty.") (internal quotation marks omitted). It did not do so.

3 RR 13 (Gate Guard's argument in the trial court that Raub lacked "contractual privity" with Gate Guard). In fact, the entire basis of Raub's lawsuit against Gate Guard is that it went out of its way to ensure Raub **was not** a party to the settlement agreement. CR 9-10.

Furthermore, because Gate Guard took pains to assure Raub that his interest would be "addressed" during any settlement, it would be unjust to allow Gate Guard to use the terms of that settlement to block Raub from obtaining a recovery here:

> Where one party has by his words or conduct made to the other a promise or assurance which was intended to affect the legal relations between them and to be acted on accordingly, then, once the other party has taken him at his word and acted on it, the party who gave the promise cannot afterward be allowed to revert to the previous relationship as if no such promise had been made. This does not create a contract where none existed before, but only prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them.

*Dairyland County Mut. Ins. Co. v. Estate of Basnight*, 557 S.W.2d 597, 602 (Tex. Civ. App.–Waco 1977, writ ref'd n.r.e.) (internal quotation marks omitted).

In essence, Gate Guard told the trial court "Craft agreed to indemnify us if Raub sued us, so now Raub has no right to sue us." 3 RR 13-14. This argument evinces a fundamental misunderstanding of the purpose and application of an indemnity clause. *See, e.g.*, *Ingersoll-Rand Co.*, 997 S.W.2d at 207. For this reason, this Court should

reject Gate Guard's contention that the indemnity clause in its contract with Craft has any bearing on Raub's right to sue Gate Guard for its own wrongdoing.

<u>**CONCLUSION AND PRAYER**</u>

Raub sued Gate Guard because Gate Guard took actions that caused him harm. This is all that is required to establish standing. The trial court had the power to hear that lawsuit, and this Court's opinion in *Berry* did not hold otherwise. For these reasons, Appellants Timothy D. Raub and Raub Law Firm, P.C. pray that this Court will reverse the trial court's January 30, 2015 order dismissing this cause for lack of subject matter jurisdiction and remand this cause for trial. Appellants further pray for any additional relief to which they may be entitled in law or equity.

Respectfully submitted,


  /s/ *Shannon K. Dunn*
Beth Watkins
Texas Bar No. 24037675
Shannon K. Dunn
Texas Bar No. 24074162
LAW OFFICE OF BETH WATKINS
926 Chulie Drive
San Antonio, Texas 78216
(210) 225-6666– phone
(210) 225-2300– fax
**Attorneys for Appellants**
**Timothy D. Raub and**
**Raub Law Firm, P.C.**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2015, a true and correct copy of this brief and appendix was forwarded in accordance with rule 9.5 of the Texas Rules of Appellate Procedure to the following counsel of record:

Greg C. Wilkins
Monica L. Wilkins
ORGAIN BELL & TUCKER, LLP
Post Office Box 1751
Beaumont, Texas 77704
(409) 838-6412– phone
(409) 838-6959– fax
gcw@obt.com
mwilkins@obt.com

     /s/ *Shannon K. Dunn*
Shannon K. Dunn
Attorney for Appellants

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of Tex. R. App. P. 9.4(i)(2).

1. Exclusive of the portions exempted by Tex. R. App. P. 9.4(i)(1), this brief contains 6,245 words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced, serif typeface using Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes produced by Corel WordPerfect X6 software and converted to PDF format by Acrobat Distiller 10.1.3.

_/s/ Shannon K. Dunn_
Shannon K. Dunn
Attorney for Appellants

# APPENDIX

DOCUMENT                                                                TAB

January 30, 2015 Order granting Gate Guard's plea to the jurisdiction   . .   1

Tab 1

January 30, 2015 Order

granting Gate Guard's plea to the jurisdiction

## IN THE COUNTY
## COURT AT LAW NO. 1
## NUECES COUNTY, TEXAS

| | |
|---|---|
| TIMOTHY D. RAUB AND<br>RAUB LAW FIRM, P.C.<br><br>V.<br><br>GATE GUARD SERVICES, L.P.,<br>SIDNEY L. SMITH AND<br>ASSOCIATION CASUALTY<br>INSURANCE COMPANY | §<br>§<br>§<br>§     CAUSE NO. 2014CCV-61588-1<br>§<br>§<br>§<br>§<br>§ |

## ORDER

BE IT REMEMBERED that on this day came on to be heard and considered the plea to the jurisdiction of Association Casualty Insurance Company, Sidney L. Smith, and Gate Guard Services, L.P. The Court having heard and considered the plea, any and all responses and replies thereto, and the arguments of counsel, is of the opinion that the plea is meritorious and should be SUSTAINED. It is, therefore,

ORDERED, ADJUDGED and DECREED that the plea to the jurisdiction of Association Casualty Insurance Company, Sidney L. Smith, and Gate Guard Services, L.P. is SUSTAINED. It is, further,

ORDERED, ADJUDGED and DECREED that the claims of the plaintiffs, Timothy D. Raub and Raub Law Firm, P.C., against the defendants, Association Casualty Insurance Company, Sidney L. Smith, and Gate Guard Services, L.P., are hereby DISMISSED for lack of subject matter jurisdiction.

Signed on this the ____30____ day of ____Jan____, 2015.

_____
JUDGE PRESIDING

143